Filed Sept. 19, 1890.

---

No. 15,495.

## Isbell v. Stewart, Administrator.

PARTITION.—*Husband and Wife.—Wife's Interest in Former Husband's Estate. —Judgment Declaring.—Collateral Attack.*—In a suit between the heirs and the widow for the partition of real estate of which the decedent died the owner, the widow and her second husband were made parties. The land was ordered sold, and the avails of the sale were ordered paid into court. The court found the shares to which the parties were entitled, and placed the wife's share in the hands of a trustee for investment, the interest to be paid to the husband and wife. The husband was to have no interest in the wife's share if he survived her, but her share was to be distributed among the children of the former husband. After the wife's death the husband sought an order requiring the administrator to pay to him one-third of the money received by him as such.

*Held,* that the court, one of general jurisdiction, having adjudicated the rights of the parties to the fund in its hands and under its control, its judgment was not subject to collateral attack. *Avery* v. *Akins,* 74 Ind. 283, and cases following it, distinguished.

SAME.—*Title in Issue.—Conclusiveness of Judgment.*—Where title is put in issue in partition proceedings the judgment upon it is conclusive.

From the Noble Circuit Court.

*J. M. Morris* and *L. W. Welker,* for appellant.

*H. G. Zimmerman* and *F. M. Prickett,* for appellee.

ELLIOTT, J.—The appellant seeks an order requiring the appellee, as administrator of the estate of Mary G. Isbell, to pay him one-third of the money received as such adminis-

trator. The appellant is the surviving husband of Mary G. Isbell, who, at the time she married the appellant, was the widow of William Lash. The money is claimed by the appellant in virtue of his rights as a surviving husband.

William Lash left surviving him seven children, the fruits of his marriage with Mary G., through whom the appellant now claims the money in controversy. No children were born to her and the appellant. At the time of his death William Lash was the owner of real estate of the value of more than twelve thousand dollars. William Mitchell purchased the interest of the children of William Lash, and after his purchase asked that partition of the land should be made. Mary G. Isbell and the appellant were parties to the suit for partition. The court found that the land was not divisible, and ordered a sale. William Mitchell became the purchaser. The court, at the proper time, made the following finding and order:

"And the court now finds from the reports of sales that there is in the hands of said commissioner, after deducting the expenses aforesaid, the sum of $8,559.35 to be paid by him to Elijah P. Lash, James J. Lash, Mary G. Isbell, Mary E. Lash and Johanna C. Lash; and the court finds that James J. Lash is entitled to $124.05, and that Elijah P. Lash, Mary E. Lash and Johanna Lash, are each entitled to the sum of $1,364.53, and that said Mary G. Isbell is entitled to $4,341.70, conditionally, as hereinafter set forth; and it is ordered and adjudged by the court that Thomas L. Graves be appointed as trustee for the share of said Mary G. Isbell; that he place the same upon interest, payable annually, taking sufficient surety for the payment thereof; that he collect and pay over all accruing interest to said Mary G. Isbell and her husband, and in case she should survive her husband, then he shall transfer the obligations which he may have taken to secure the payment of said fund, together with any moneys which he may have in his hands

belonging to said lands, to Mary G. Isbell; in case Mary G. Isbell shall die before her husband, then that he distribute said obligations and moneys among the children of William Lash, deceased, the former husband of said Mary G. Isbell, in equal parts."

On the 2d day of February, 1884, Graves, the trustee, resigned his trust and the court approved his report and directed him to pay over the money in his hands to Mary G. Isbell. The appellee was not before the court when the resignation of Graves was accepted and the order made, nor were the heirs of William Lash. The judgment rendered in the suit for partition was never vacated or modified. The complaint in the suit for partition did not ask to settle the interest of any of the parties further than that partition be made, but it did pray for general relief.

We do not deem it necessary to determine whether a woman who marries a second time can acquire an absolute right to the money realized from the sale in partition proceedings of land of which her first husband died the owner, in a case where there is no judgment declaring the extent of her estate and interest, for here there is a judgment declaring her estate and interest, and it is one rendered after a second marriage and in a suit where both she and her second husband were in court.

We are not willing to extend the doctrine of such cases as *Avery* v. *Akins*, 74 Ind. 283, *Utterback* v. *Terhune*, 75 Ind. 363, and *Miller* v. *Noble*, 86 Ind. 527, to such a case as this, for we think those cases and the cases following them restrict the effect of a judgment in a partition suit quite as much as can possibly be done under the provisions of our statute. If the question were an open one, some of the members of the court would favor a different doctrine from that asserted in those cases, but we feel bound to adhere to the doctrine declared in the former decisions. We think, however, that there is a clear distinction between the case before us and those to which we have referred, and that they do not control it.

The court of common pleas, in which the judgment in the partition suit was rendered, was one of general jurisdiction, possessing the jurisdiction of a court of equity as well as that of a court of common law. *Sims* v. *Gay*, 109 Ind. 501; *Powell* v. *North*, 3 Ind. 392; *Doe* v. *Smith*, 1 Ind. 451. It had, therefore, power to decide all questions of equity and of law which came before it in the suit for partition. This general principle is laid down in the long line of cases which hold that where title is put in issue in partition proceedings the judgment upon it is conclusive. *McMahan* v. *Newcomer*, 82 Ind. 565, and cases cited; *Luntz* v. *Greve*, 102 Ind. 173; *Thorp* v. *Hanes*, 107 Ind. 324; *Spencer* v. *McGonagle*, 107 Ind. 410; *Woolery* v. *Grayson*, 110 Ind. 149; *Watson* v. *Camper*, 119 Ind. 60; *L'Hommedieu* v. *Cincinnati, etc., R. W. Co.*, 120 Ind. 435.

When the court was informed that the land was not susceptible of division it had authority to order a sale, and upon the payment of the avails of the sale into court its jurisdiction over those funds was absolute and complete, hence the question as to who were entitled to share in the fund was necessarily before the court. No judgment could, indeed, be rendered without disposing of the fund in court, and a judgment disposing of it can not by any possibility be void as to parties duly in court, as were the appellant and his wife. Mr. Freeman says: " The rule that a judgment is conclusive upon all the issues determined by it, is not the less applicable to judgments in partition than to judgments in any other form or kind of action." Freeman Co-Tenancy and Partition, section 530. This rule governs here, for the payment of the money into court made its distribution an issue in the case, and the judgment is conclusive. It seems very clear to us that there was jurisdiction over the fund as well as over the parties, and if this be true no collateral attack against the judgment can be successful.

We do not enter upon a consideration of the question decided in *Small* v. *Roberts*, 51 Ind. 281, and *Klinesmith* v.

*Socwell,* 100 Ind. 589, for here there is a judgment by a court of competent jurisdiction adjudicating the rights of parties to a fund then in the hands and under the control of the court. Behind that judgment we can not look.

Judgment affirmed.

Filed Sept. 19, 1890.