CASE 44—LIBEL—SEPTEMBER 28.

# Courier-Journal Company v. Sallee.

APPEAL FROM LINCOLN CIRCUIT COURT.

1. LIBEL—CONTINUANCE—PUBLIC PREJUDICE.—In an action for damages for libel against the publishers of a newspaper it is not ground for continuance that there exists in the county where the action is pending a prejudice against the defendant growing out of its failure to support the nominees of its political party for public office.

2. SAME—EVIDENCE.—It was not error to permit the plaintiff to testify that the defendant had published, prior to the publica-

tion of the defamatory matter complained of, an article describing an accident to him in being thrown from a mule, such article tending to put the defendant on notice of the true cause of plaintiff's confinement, the alleged defamatory matter giving a cause averred to be untrue.

3. LIBEL—PUNITIVE DAMAGES—INSTRUCTIONS.—An instruction in such an action authorizing the jury to find punitive damages if they believe from the evidence that the defendant in publishing matter which was libelous, *per se*, did so without a belief in its truth based on reasonable grounds, or that the defendant was recklessly indifferent to the natural consequences of its publication is proper.

4. SAME—MALICE—INSTRUCTIONS.—It is not necessary to use the word malice in an instruction where the instruction contains in apt language the essential legal definition of the term.

F. HAGAN FOR APPELLANT.

1. The facts of the case show that there was no express malice, and there were no facts from which express malice or gross malice could be inferred and, therefore, it was error to give the instructions for punitive damages.

2. The court erred in telling the jury they were bound to give such damages as would compensate the plaintiff, without also telling them the law of damages as to malice and the effect of the want of malice, and how implied malice was mitigated by the facts proven. Ratcliffe v. Courier-Journal Co., 99 Ky., 416 (18 Ky. Law Rep., 291); Lehrer v. Elmore, 100 Ky., 56 (18 Ky. Law Rep., 551); Odgers, Slander and Libel, 317; Townsend Sl. and Lib., 538; Newell, Sl. and Lib., 901; Casey v. Hulgan, 21 N. E. R., 322; 59 Wis., 95; 17 Nev., 875; Short on Libel, 582; Sugow v. Fulton, 34 Md., 128; s. c. 6 Am. R., 321; Childers v. St. Jose Mercury, 105 Cal., 284; s. c., 45 Am. S. R., 40; McAllister v. Detroit Free Press, 76 Mich., 338; 15 Am. St. R., 318; Calloway v. Middleton, &c., 2 A. K. M., 372; Hart v. Reed, 1 B. M., 172; Williams v. Greenwade, 3 Dana, 432; 38 Ia., 355; Wright, 124; 20 N. H., 561; 60 Ind., 424; 2 Cranch C. C., 17; 19 Mich., 35; Townsend, 375; 67 Cal., 109; Townsend, 534.

3. The damages are excessive.

4. Appellant ought not to have been forced into trial.

R. J. BRECKINRIDGE AND W. G. WELCH FOR APPELLEE.

1. No errors will be considered except those set out in the motion for a new trial. Alexander v. Humber, 86 Ky., 565; Com., v. Williams, 14 Bush, 297.

2. It was no abuse of discretion to refuse the continuance. Ky. St., p. 475; Enc. of Pl. & Pr., vol. 4, p. 832, sec. 5.

3. The court did not err to appellant's prejudice in admitting or rejecting testimony.

4. The instructions were not erroneous. Tillottson v. Cheatem, 3 J. R., 56; Odgers Sl. & Lib., 267, 278, 297; Lehrer v. Elmore, 37 S. W. R., 293; s. c., 100 Ky., 56.

5. The verdict was not excessive. Worford v. Isbel, 1 Bibb, 247; Letton, &c., v. Young, &c., 2 Met., 558; L. & N. R. R. Co. v. Fox, 11 Bush, 495; L. & N. R. R. Co. v. Brooks' Admx., 83 Ky., 129.

JUDGE BURNAM DELIVERED THE OPINION OF THE COURT.

On May 26, 1896, the defendant was a corporation, and published in the city of Louisville a newspaper called the Courier-Journal, and the plaintiff was a farmer, residing in Boyle county. On that day the following article appeared in the daily edition of that paper: "Harrodsburg, Ky., May 26. (Special.) It has just been learned from a man of unquestioned integrity, who lives in the neighborhood, that Tom Sallee, of near Parksville, in Boyle county, is expected to die of terrible treatment received a short while ago at the hands of two brothers, both of whom had for some time past suspected their wives of unfaithfulness. They concocted a scheme, and each went to his respective home, and each discovered by stealth another man in his room. One of the men was recognized, but the identity of the other was not learned. The two brothers retreated, and, gathering several friends to their aid, laid in wait the next night at a house where it was thought that Sallee would be caught visiting for a similar purpose. The party

[ 22 ]

caught their man, and, despite his appeals, took him to the woods, and horribly mutilated him. The operation was performed in such a barbarous and unprofessional manner that the victim of their vengeance is about to die. Some sensational arrests will likely be made in that vicinity very soon. The entire neighborhood has endeavored to keep the matter quiet, but the serious condition of Sallee has necessitated the best of medical skill, and the affair could not be kept quiet longer. Salee is a grandson of a prominent Mercer farmer,"—plaintiff claiming that the publication was libelous, and he instituted this suit in the Boyle Circuit Court to recover damages on account thereof. The answer of appellant company denies the malice charged in the petition, and avers that it was a general rumor in Mercer and Boyle counties, in the neighborhood in which plaintiff resided, that the matters and things set out in the publication occurred and happened; that the report came from credible sources, and was believed by a large number of respectable people to be true; that its correspondent at the town of Harrodsburg, hearing the report from reliable sources, at once investigated it, and, after a careful and faithful examination and full investigation of the report, and becoming satisfied that same was true, telegraphed it to appellant; and that it, relying upon the care, prudence, and honesty of its correspondent, and believing same was true, published it as an item of news, without malice or ill will towards the plaintiff, and without intention to damage him or do him any injury whatever. Plaintiff, in reply, put in issue all the affirmative allegations of the answer. The case being called for trial at the October, 1896, term of the Boyle Circuit Court, defendant filed a motion for a change of venue, which was supported by affidavits in

which it was alleged that there existed against it in
Boyle county hostility and bias in the public mind be-
cause it was opposing the election of candidates nomin-
ated by the party with which it had formerly been identi-
fied. The motion for a change of venue was sustained, and
the case transferred to the Lincoln Circuit Court, where
it was tried on November 10, 1896, against the protest of
the plaintiff. The trial resulted in a verdict and judg-
ment in favor of plaintiff for $2,500, and we are asked upon
this appeal to reverse that judgment for a number of al-
leged errors occurring upon the trial, the more important
of which are: First, that the court abused its discretion
in overruling defendant's motion for a continuance, based
upon the grounds set forth in the affidavits of divers wit-
nesses; second, that the court erred in excluding important
testimony for defendant, and in permitting plaintiff and
other witnesses to testify to having read in the paper pub-
lished by defendant, in an issue of that paper published
previously to the libelous publication complained of by
plaintiff, an account of an accident sustained by the plain-
tiff in being thrown from a mule; and, third, that the court
erred in giving to the jury, on its own motion, instruction
marked "A," and refusing instruction "B," asked for by
defendant.

We will consider these alleged errors *seriatim*. The
ground on which the motion for a continuance was based
was identical with that for which the change of venue was
granted from the Boyle to the Lincoln Circuit Court, i. e.
that some of the citizens of Lincoln county entertained
hostile feelings against defendant, growing out of its atti-
tude towards the candidates of the Democratic party in
the presidential campaign which had just closed. The
propriety of granting a continuance on this ground is nec-

essarily relegated to the discretion of the trial judge, who, from closer contact with the people, is better able to judge of the intensity and universality of the prejudice com- plained of. Ordinarily, public excitement or prejudice is not deemed sufficient ground for a continuance where the statute authorizes a party to ascertain the state of mind of a juror by examining him preliminary to challenge. See 4 Enc. Pl. & Prac. p. 832, sec. 5, and cases there cited. There is no claim that there was any prejudice against de- fendant growing out of the particular publication in ques- tion, or that plaintiff exercised any undue influence in the county. An influential newspaper can never hope to be in accord on public questions with all the citizens of any community. There never was, and never will be, a time when a very large proportion of those who differ from its views on political questions will not, with more or less vehemence, disapprove of its course in such matters; and to hold that such disapproval renders it impossible for the proprietors of such a journal to obtain a fair trial in a court of justice in a civil action, and a good ground for a continuance, would mean indefinite postponement, and would practically render trial by jury in such cases im- possible.

We can not think that the second objection—that the court erred in rejecting evidence offered by the defendant, and in admitting evidence offered by the plaintiff—is urged seriously. The defendant was given the utmost latitude in the introduction of its evidence as, for example, the defendant was permitted to prove by its correspondent who forwarded the article all the sources of his informa- tion with regard thereto, how and from whom he heard the report, and what the parties said to him, although not one of his informants professed to have any personal in-

formation as to its truth, or, indeed, to live in the neigh-
borhood of plaintiff. The competency of such evidence
may well be doubted in an action against a publisher to
rebut malice or mitigate damages, where the article is
libelous *per se*, and was published without any inquiry
or knowledge by the defendant on the subject,
it certainly had no bearing upon its good faith.
It received the libelous article from its corre-
spondent, who was not its agent in the sense that
his act was its act, and his information its in-
formation; and it could receive no advantage from the fact
that he was imposed on or innocently mistaken. See
Moray v. Association, 9 L. R. A. 624 [25 N. E. 160]. And
it was certainly competent for the plaintiff to prove that
the defendant had received from the same correspondent,
and published in its journal, only a few days before the
publication of the article in question, a correct account of
how the injury to the plaintiff which occasioned his con-
finement had occurred, as bearing, upon the question
of defendant's good faith in its contention that
it was innocent of any intentional wrong. If, as a matter
of fact, it had received correct information as to how the
injury to plaintiff occurred, it was at least sufficient to
put defendant on its guard before publishing as facts
stories picked up on the street by its correspondent, to the
detriment of plaintiff. We perceive no error in the ad-
mission or exclusion of testimony.

The chief contention of defendant is that the court erred
in failing to instruct the jury that plaintiff was not en-
titled, under the facts of the case, to recover punitive
damages; and it especially complains that that part of
the instruction given by the court authorizing punitive
damages was not qualified by the use of the word "malice."

There can be no doubt that in all actions for libel the gist
of the action is malice, but it must be remembered that
the law always presumes that in the publication of an
article which is libelous on its face it was published with
malicious intent, and this presumption remains through-
out the entire case until it is rebutted by proof of the
contrary motive, or that the publication was justifiable;
and nothing short of the truth of the matter published
will excuse its publication. See Riley v. Lee, 88 Ky. 614
[11 S. W. 713]. We are aware that the adjudications on
this question have not been uniform in all the States,
it being held in some of them that only compensatory
damages can be recovered. But in this State, in all ac-
tions for tort, punitive damages are allowed where the
injury is the result of a wanton or grossly negligent act;
and intent or purpose to injure is not a necessary ingre-
dient. This is especially true where the words published
are actionable *per se*. The newspaper is a public neces-
sity, and the conditions under which it is required to be
conducted should not be unreasonable; but when a pub-
lication is made in a newspaper, charging a citizen with
disgraceful or criminal practices, it must be at the peril
of the publisher. To relieve a newspaper of all liability
for a false publication unless actual malice is shown
would result in establishing one rule for newspaper pub-
lications and another for all other characters of publica-
tions, and would result, in effect, in their exoneration from
any but compensatory damages, while in all other cases
of tort punitive damages may be imposed. Mr. Towns-
hend, in his work on Slander (section 87), says:
"As respects the term 'malice,' it is sometimes employed
to signify the absence of legal excuse; sometimes as mean-
ing a bad or wicked motive or intent; sometimes as mean-

ing *scienter*, or knowingly; sometimes as meaning inten-
tionally, or voluntarily; and *often without any definite
or ascertainable meaning whatever.*" And then, referr-
ing to the distinction attempted to be made between
malice in law and malice in fact, he says: "The supposed
distinction is unreal and unsound; for, first, there is no
distinction between what is inferred and what is proved;
what is or is supposed to be rightfully inferred is proved."
Again, he says: "One meaning is which intent or intention
is employed is will. When so employed, it corresponds to
what we have described as voluntary; and if, instead of say-
ing *intent* is necessary to constitute a wrong, we say *will*
is necessary to constitute a wrong, and then keep in
view the distinction between will (voluntary) and intent,
we at once remove very much of the difficulty which
has been supposed to be inherent in the law relating
to slander and libel.  *  *  *  *  The intent—meaning
the intent to effect certain consequences—with which an
act is done is material on the question of the amount of
damages. The absence of a bad intent will mitigate the
damages; the presence of a bad intent will aggravate
them. The intent of the actor is sometimes material as
a link in the chain of evidence to determine whether or
not some certain act was or was not done under circum-
stances constituting a legal excuse; as, when the legal
excuse is dependent upon the question, what was the be-
lief of the actor? With these exceptions, we conceive
that intent is never material, and that intent is
never an essential element of wrong. No amount
of good intention will excuse an act otherwise
wrongful, and no amount of bad intent will make wrong-
ful that which is otherwise a permitted act. If intent is
not an essential element of wrong, neither, in the sense

of bad intent, is malice.    If the term 'malice' is to be re-tained in use as a technical term, it will be only in the sense of want of legal excuse."    The part of the in-struction which authorized the jury to give punitive damages    required the jury to believe from the evi-dence that the defendant, in publishing the words, did so without belief based on reasonable grounds, or that the defendant was recklessly indifferent to the natural consequences of such publication.    The requirements of the instruction, before the jury were authorized to give punitive damages, were the very essence of malice as defined by the foregoing extracts from Mr. Townshend. The use of the word "malice" in the instruction would have been surplusage; for, if it had been used, and the court had been called upon to define its meaning, it could not have done so in more appropriate words than those used in the instruction.    In our opinion, this objection is not well taken.    It is true that there is no evidence in the record of any ill feeling on the part of the defend-ant towards the plaintiff, but this is not necessary in order to support an instruction for punitive damages.    If, as a matter of fact, the words published were false, and tended to the injury of plaintiff, and were published reck-lessly, even without special ill will, defendant is equally guilty, and punitive damages may be recovered.    We therefore conclude that the court did not err in refusing the instruction offered by the defendant.    It appears to us that the record is free from substantial errors to de-fendant's prejudice, wherefore the judgment is affirmed.