CASE 60.—ACTION BY HENRY VOGT MACHINE COMPANY AGAINST PENNSYLVANIA IRON WORKS COMPANY.—November 4, 1906.

## Pennsylvania Iron Works Co. v. Vogt Machine Co,

Appeal from Jefferson Circuit Court (Common Pleas Branch, First Division).

Judgment for plaintiff and defendant appeals.—Affirmed.

1. Libel and Slander—Action by Corporation—Right to Sue.—A corporation may sue for libel on it as distinct from a libel on its individual members.

2. Principal and Agent—Acts of Agent—Libel—Liability of Principal.—Defendant's authorized agent in charge of its branch office wrote a libelous letter to an ice company concerning plaintiff's ability to fulfill a contract for the purchase of an ice machine for the purpose of obtaining for defendant the contract to build the machine and take the business away from plaintiff. Defendant did not authorize the insertion of libelous statements in the letter, but did not repudiate the the same until it was sued for libel. Held, that defendant was chargeable with the acts of its agent, and was liable for the damages sustained by plaintiff from the libel.

3. Libel and Slander—Writings Libelous Per Se.—Plaintiff and defendant were rival ice machine manufacturers, both endeavoring to secure a particular contract, and defendant's agent for this purpose wrote a letter to the proposed purchaser stating that plaintiff was a second-hand dealer, that it put in a class of inferior work, was a scab establishment, and did not have a mechanic in its employ. Held, that such writing was libelous per se.

vol. 139—32

4.    Same—Punitive Damages.—Where a letter was written concerning a corporation's business, which was libelous per se, the jury was at liberty to presume that it was published with a malicious intent authorizing a recovery of punitive damages.

5.    Corporations—Acts of Agent—Ratification.—A corporation's failure to disapprove or repudiate a letter written by its agent which was libelous per se after obtaining knowledge of its publication, operated as a ratification and approval of the libel.

BENNETT H. YOUNG and M. W. RIPY for appellant.

THUM & CLARK, GIBSON, MARSHALL & GIBSON for appellee.

OPINION OF THE COURT BY JOHN D. CARROLL, COMMISSIONER—Affirming.

The appellant is a Pennsylvania corporation and the appellee a Kentucky corporation, and they are rivals in the manufacture of ice machines.

In 1896 the appellant opened an office in Louisville, Ky., and placed it in charge of William Wilson. In 1897 appellant and appellee were competitive bidders for an ice machine desired by the Northern Lake Ice Company of Louisville. Appellee was the successful bidder, and when Wilson learned of this fact he wrote a letter to the Northern Lake Ice Company, the material parts of which are as follows: "* * * The reason we withdrew our proposition is because you telephoned us that the tank was let to the Sulzer-Vogt Machine Co., and another reason is because we could not figure against a second-hand dealer. We do not recognize that company as ice machine builders, and they know absolutely nothing about the compression system. They never have done any work in connection with the compressed system, and at any time they do they will make a failure. * * * The material

they put in the work of this class is so far inferior to ours that we could not figure with them; and you will find this when the tank is erected. *   *   * Our shops and equipments are the largest in existence in our line, and we employ nothing but union labor, whereby the other parties run a scab establishment and have not a mechanic in their whole establishment including the head of the concern. We will not be slow to make this known to the different unions in this and other cities. *   *   * The above might seem strong, but it is our sentiment. We know the machine will not make its capacity with a tank built by parties who absolutely know nothing of it and will eventually give us a black eye as the other parties are interested in running down the compression system. They cannot make capacity with their own machines and could not try to do it with another make and the whole system will not be put in right. If it is not too late, you had better reconsider the matter and let it to parties who know how to do it.''

This letter was written on a letter-head of the Pennsylvania Iron Works Company from Southern Office 44 Bull Block, Louisville, Ky., and was signed ''Pennsylvania Iron Works Co., Wm. Wilson, Manager 'Southern Office.''

After this time, the Sulzer-Vogt Machine Company changed its corporate name to the Henry Vogt Machine Company, but before changing its name, the Sulzer-Vogt Machine Company brought this action against appellant, alleging that appellant by the manager of its Southern office at Louisville wrote and delivered to the Northern Lake Ice Company the letter mentioned, the purpose of which was to induce the ice company to decline to award the contract to appellee, and that the letter was written falsely, wickedly

and with the malicious intent to deprive the appellee of said contract, and to injure it in its reputation and business, and asked damages for the libelous matter in the sum of $20,000.

The appellant, in its answer, after traversing generally the allegation of the petition, denied that Wilson had any authority from or on behalf of it to write the letter, and that if Wilson did write such letter, it was entirely unauthorized. To this answer a reply was filed, in which it is averred that Wilson at the time he wrote the letter and for a long time prior thereto, with the knowledge and approval of the appellant held himself out as the manager of the Southern office and as such manager with the knowledge and consent of the appellant was conducting and carrying on business for it; and further that appellant after learning said letter had been written by Wilson acting as its agent, failed and refused to disavow or retract the same, but adopted and confirmed the act of Wilson in writing and delivering said letter, knowing the statements therein to be false and malicious. This completed the pleadings in the case, except an entry of record controverting the affirmative matter contained in the reply.

On a trial, appellee recovered judgment for $5,000, to reverse which this appeal is prosecuted; and it is urged, first, that the principal is not liable in damages for the unauthorized wrongful act of its agent; second, that there was no evidence upon which to submit to the jury the ratification of it; third, that there was no evidence to authorize a finding of punitive damages; and fourth, that the petition does not state a cause of action.

It appears from the evidence that Wilson had been an employe of appellee, and in March, 1896, he so-

licited employment from appellant, and appellant wrote to appellee requesting information concerning Wilson. Soon after this date, Wilson became the agent of appellant. Appellant furnished the printed letter-heads used by Wilson in his correspondence, but Wilson had put on the letter-heads the words "From Southern Office 44 Bull Block, Louisville, Ky." These letter-heads Wilson used in his correspondence with appellant, and it knew that he was in the habit of signing its name by him as manager of its Southern office, that he was holding himself out as manager of its Southern office and this state of affairs continued until the latter part of December, 1899, when Wilson removed from Louisville. It also appears that appellant advertised extensively in trade journals, and always mentioned in the advertisement the fact that its Southern office was at 44 Bull Block, Louisville, Ky. Wilson also held himself out to the public generally as the agent of appellant, and testified that in the libelous letter complained of the word "we" refers to the Pennsylvania Iron Works Company.

The letter complained of fell into the hands of Dr. Satterwhite, who, as president of the board of commissioners for the Lakeland Asylum, was negotiating with different parties for the erection of an ice plant at the institution, and was delivered by Satterwhite to the president of appellee. It does not appear that appellant ever repudiated the letter written by Wilson except in its answer, and only there by denying that it wrote or authorized the writing of the letter by Wilson.

A corporation is liable in damages for the publication of a libel as it is for other torts. To establish its liability the publication must be shown to have

been made by its authority, or to have been ratified by it, or to have been made by one of its servants or agents in the scope of his employment and in the course of the business in which he was employed. And a corporation may sue for libel upon it as distinct from libel upon its individual members. Newell on Slander and Libel, p. 361; Washington Gas Light Co. v. Lansden, 172 U. S. 534; Townsend on Libel & Slander, sections 261-265; Peterson v. Western Union Telegraph Co., 75 Minn. 368.

The evidence shows very clearly that Wilson was the duly authorized agent of appellant and in charge of its Southern office at the time he wrote the letter; that it was written in the course of his business for appellant and was within the scope of his employment is made plain by the fact that it was written for the purpose of obtaining for the appellant the contract to build the ice machine for the Northern Lake Ice Company and to take this business away from appellee. This being the sole purpose of the letter, and Wilson being at the time the general agent of appellant, it cannot be doubted that in writing it he was acting within the scope of his employment and therefore appellant is liable for his acts. It may be true that appellant did not authorize Wilson to insert in this letter the libelous statements it contained, and it may be conceded that they were written without its knowledge or consent, but this will not exonerate it from liability for the wrong perpetrated by him in an effort to obtain business for it. If the appellant is not responsible for this conduct of Wilson, it would be difficult to find a case in which a corporation could be held liable for the acts of its agents in the publication of libelous matter. Corporations transact all of their business through agents; and when the agent is

Pennsylvania Iron Works Co. v. Vogt Machine Co.

acting in the course of his business and within the scope of his employment, the corporation will be held accountable for his acts and doings in the same degree as an individual will be held answerable for torts perpetrated by him in his individual capacity. Where an action will lie against an individual for a tort, it will lie against a corporation if the tort was committed by its agent or servant in the scope of his employment.

It is argued that the petition does not state a cause of action, because the words and statements contained in the letter are not per se libelous, and it is said that if they are not per se libelous they can only be made actionable by an averment of injury to plaintiff's business and special damage occasioned thereby.

"Defamatory words falsely spoken of a person, which impute to the party unfitness to perform the duties of an office, or employment of profit, or the want of integrity in the discharge of the duties of such an office or employment, are actionable in themselves without proof of special damages." (Newell on Slander & Libel, page 168; Am. & Eng. Encl. of Law, Vol. 18, page 954.)

"Next to imputations which tend to deprive a man of his life or liberty or to exclude him from the comforts of society may be ranked those which affect him in his office, profession or means of livelihood. To enumerate the different decisions upon this subject would be tedious, and to reconcile them impossible, yet, they seem to yield to a general rule sufficiently simple and unembarrassed, namely, that words are actionable which directly tend to prejudice any one in his office, profession, trade or business. So, if a person carry on any trade recognized by law, or be engaged in any lawful employment, however humble,

an action lies when any words prejudice him in the way of such trade or employment; but the words must relate to his trade or employment and touch him therein. It is not necessary to prove special damages in any action for libel whenever the words are spoken of the plaintiff in the way of his profession or trade. Such words from their natural and immediate tendency to prejudice and injure, the law judges to be defamatory, although no special loss or damage is or can be proved." (Newell on Libel & Slander, p. 856.) To the same effect is Townsend on Libel & Slander, Sec. 146; Manire v. Hubbard, 22 Ky. Law Rep. 1753.)

The statements in this letter that appellee was a second-hand dealer, that it put in a class of inferior work; that it was a scab establishment; that it did not have a mechanic in its establishment, come fully up to the rule announced in these authorities, that an allegation of special damages is not necessary where the charges have a tendency to injure a person in his trade or business, and such charges are actionable per se.

The court instructed the jury that if they believed from the evidence that the letter was written with express malice against the plaintiff, they might in addition to compensating plaintiff for any damage or injury, find punitive or exemplary damages against the defendant. In Courier-Journal Printing Company v. Sallee, 104 Ky. 335, it is said: "It must be remembered that the law always presumes that in the publication of an article which it libelous on its face, it was published with malicious intent, and this presumption remains throughout the entire case until it is rebutted by proof of the contrary motive. In this state, in all actions for torts, punitive damages are allowed where the injury is a result of a wanton

or grossly negligent act. The intent or purpose is not a necessary ingredient. This is especially true where the words published are actionable per se."

Newell on Slander & Libel, p. 843, is to the same effect.

The letter in this case being libelous per se, the presumption is that it was published with malicious intent, and this question having been submitted to the jury under proper instructions, they had the right in their discretion to find punitive damages against appellant.

The court also instructed the jury that although they might believe that Wilson was not the agent of the company at the time the letter was written, yet if the company subsequently ratified or approved the letter and the statements therein contained, they should find for plaintiff Of this instruction appellant complains. There is no affirmative evidence in the record of the express ratification of this letter by appellant, but Wilson having written it within the scope of his employment, appellant as we have held was liable for the consequences of its publication, and, therefore, ratified it by its failure to disapprove or repudiate the letter after obtaining knowledge of its publication, which it did long before the trial took place. Its failure under the circumstances of this case to disavow the letter must be taken to be a ratification and approval of its contents.

After a careful examination of this record, we have been unable to find any error that would authorize a reversal, and the judgment is affirmed.