## Reid v. Sun Publishing Company.

(Decided May 6, 1914.)

### Appeal from McCracken Circuit Court.

1. Libel and Slander—Action For—What Defendant May Show—Section 124, Civil Code.—In an action for libel for falsely publishing that it was rumored the plaintiff had committed murder, it was competent, under Section 124 of the Civil Code of Practice, for the defendant to show that the rumor was generally known in the neighborhood; it is not competent to show in detail the conversations had with different persons with regard to the alleged rumor.

2. Libel and Slander—Presumption of Malice—Punitive Damages.—The general rule is, that where the publication is libelous per se, the law presumes malice and authorizes a recovery of punitive damages.

3. Libel and Slander—Words Libelous Per Se—Malice.—Where the words published are libelous per se, it is a reversible error to predicate the plaintiff's recovery of punitive damages upon a showing of actual malice, since the law implies malice in such a case.

D. G. PARK for appellant.

J. D. MOCQUOT for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

This action by Reid for damages for libel, is based upon the following news account alleged to have been published of and concerning Reid, in "The Paducah Evening Sun," of August 5, 1913:

"DRAWING NET IN ON FINLEY SLAYER BEFORE ARRESTING.

### Officers Sure of Murder Seek to Cinch Case With Conclusive Evidence.

## No CHARGE WILL BE BROUGHT UNTIL POSITIVE.

### Arrest Rumors Are False.

"No arrests in the mysterious murder of Tate Finley have been made, but one is probable in a few days. The officers at present are without all the evidence necessary for a conviction.

"It is positive that Finley was killed because of politics. He was a supporter of James W. Eaker, candidate for sheriff in the recent primary, and he had quarreled with friends who were supporters of rival candidates. Mr. Finley had stated to friends that he realized that he had relatives who would kill him if they met him alone.

"Sheriff George Houser made a careful survey of the scene and he is positive Finley was murdered.

"Detective T. J. Moore was employed by the family to make an investigation. Detective Moore, too, is positive that Finley was murdered, and says that a left-handed man committed the deed.

"It is evident that there was a struggle before the end. The men circled around and around and the leaves were disturbed for some distance. Blood was found in numerous places. The officers are greatly handicapped because of the fact that the clothes were burned. Members of the family did not think they were of value.

"The wound in the right side of Finley's abdomen alone, it is believed, would have caused his death. It is thought that Finley fought his assailant until he fell to the ground, and then his murderer cut his throat. Finley had a small pocket knife which had a sharp point, but the blade was dull. With the knife it would have been almost impossible for Finley to have inflicted the wounds.

"Reports were current today that a relative of Finley had been placed under arrest, but this is false, as

the officers are awaiting until they are positive that they have a case cinched.''

After the court had properly stricken from the petition three clauses thereof which stated irrelevant matter, the defendant answered admitting the publication in the first paragraph, and that it was published of and concerning appellant, although he was not named therein. It denied, however, any actual malice or ill-will against the appellant, in making the publication.

In the second paragraph of its answer, appellee alleged that the rumors referred to were current in Paducah, and in the neighborhood where Finley had lived; that they had been extensively and broadly circulated, to the effect that Finley had been murdered by some one who was related to him; that the defendant merely published the article complained of in good faith and as an item of news, and without any wantonness, ill-will, hatred or malice toward the plaintiff.

The third paragraph is a mere traverse of the allegations of damage; while the fourth paragraph affirmatively pleads that the plaintiff never at any time requested the appellee to retract said publication or charge, or to publish a correction, retraction or explanation thereof.

The trial resulted in a verdict and judgment for Reid in the sum of one cent, and from that judgment he prosecutes this appeal.

1. It is contended that the trial court erred in overruling the demurrers to the several paragraphs of the answer; and also in overruling the appellant's motion to strike out the several paragraphs of the answer, and similar motions to strike out the material portions of the several paragraphs. The demurrers and motions aimed at each and every paragraph of the answer were so unnecessarily repeated and duplicated as to confuse somewhat the legal questions raised thereby. Giving them, however, the broadest legal effect that could be raised either by the demurrers or the several motions, we will consider the several paragraphs of the answer in connection with the instructions which submitted the case to the jury.

The instructions read as follows:

''Gentlemen of the jury:

''No. 1. It is admitted by the pleading in this case, and is the undisputed evidence, that defendant, in its newspaper, 'The Paducah Evening Sun,' on August 5th,

1913, published the following of and concerning the plaintiff, J. Randolph Reid, to-wit: (The publication as above given is here set out in full.)

"The court now instructs you that you will find for the plaintiff such damages as you may believe from the evidence will fairly and reasonably compensate him for injury to his character, if any, and for humiliation and mortification to his feelings, if any of either, or mental anguish and suffering, if any of either; but in all not exceeding the amount claimed in the petition, to-wit: $10,000.00."

"No. 2. The court further instructs you that if you shall believe from the evidence in this case, that said publication was induced by actual malice on the part of the defendant toward plaintiff, that is with reckless or wanton disregard of plaintiff's rights, then you may or may not, in the exercise of your sound discretion, in addition to compensatory damages as defined to you by instruction No. 1, assess such additional punitive or exemplary damages as you may think right and proper under the facts of this case, but not exceeding in all the amount claimed in the petition, to-wit: $25,000.00.

"But unless you shall believe from the evidence you cannot find for the plaintiff exemplary or punitive damages.

"No. 3. The court further instructs you that if you find for plaintiff exemplary or punitive damages as defined to you by instructions No. '2,' then you will separate your findings of damages and say in your verdict what amount of compensatory damages you find and what amount of exemplary or punitive damages, if any, you find, and fix each in separate amounts.

"No. 'A,' The court instructs you that the publication set forth in instruction No. '1,' accused plaintiff of the crime of murder in connection with the death of Marshall T. Finley; and that it is admitted by the pleadings that such accusation is false and untrue; and that it was published by defendant of and concerning plaintiff without just cause or legal excuse, and you will take these facts as true."

It will be observed that the first instruction peremptorily directs the jury to find for the plaintiff, while the second instruction authorizes punitive damages if the publication was induced by actual malice, on appellee's part.

Instruction "A" is equally peremptory and supplementary to the first instruction, by directing the jury to take as true, not only the fact that the charge was made against the plaintiff, but that it was false and published without excuse. As the instructions did not cover either of the special defenses relied upon in the second and fourth paragraphs of the answer, there was no error in permitting them to remain in the answer unless they were used to justify the admission of incompetent testimony. But evidence under these two paragraphs was admissible in mitigation of damages. Civil Code, section 124, Acts 1910, p. 294.

Appellee's evidence was confined almost entirely, if not exclusively, to proof that the rumors had been extensively and broadly circulated, to the effect that appellant had murdered Finley, which appellant's officers and reporters did not believe, and that the publication was made in good faith.

The rule upon this subject is laid down in Nicholson v. Rust, 21 Ky. L. R., 648, 52 S. W., 933, as follows:

"Upon the trial of the case quite a number of witnesses were permitted to detail in their testimony conversations had by them with different persons with regard to the alleged report about appellant. This was error. It was competent, under section 124 of the Civil Code, to have inquired of all witnesses whether or not the report spoken of was generally known in the neighborhood, but there the inquiry should have ceased. (2 A. K. M., 373; Newell on Slander, pages 893-4, section 70.) It was always competent for appellee to prove the fact that he had stated he did not believe the report, and that he gave the name of his author, and any other mitigating circumstances for the purpose of rebutting actual malice and escaping the infliction of punitive damages."

See also Courier-Journal Co. v. Sallee, 104 Ky., 340. Under the rule thus laid down, the trial court, for the purpose of rebutting malice and the infliction of punitive damages properly admitted testimony which tended to show that the report of appellant's connection with the murder was generally known in the neighborhood; it did not go any further, except possibly in a very few instances, when details were brought out by appellant's cross-examination. But to these answers, appellant could not, and did not object.

Appellant further objects, however, that the first and second instructions required him to prove actual malice

before he could recover, and that this requirement violated the rule laid down in all the authorities, including Nicholson v. Rust, *supra*. This criticism in its full import, is not sustained by the record. On the contrary, as above pointed out, the first instruction peremptorily directed the jury to find for the appellant, without, of course, mentioning malice, while the second instruction went further and authorized punitive damages in case appellee acted maliciously.

The general rule is that where the publication is libelous *per se,* the law presumes malice and authorizes a recovery of punitive damages. Tanner v. Stevenson, 138 Ky., 578, 30 L. R. A. (N. S.), 200; Pennsylvania Iron Works Co. v. Henry Vogt Machine Co., 139 Ky., 497; 8 L. R. A. (N. S.), 1023.

It is not necessary that the publication be made maliciously in order to authorize a recovery of punitive damages. "If, as a matter of fact, the words published were false, and tended to the injury of plaintiff, and were published recklessly, even without special ill-will, defendant is equally guilty, and punitive damages may be recovered." Courier-Journal Co. v. Sallee, 104 Ky., 344.

It must follow therefore, that if the words be libelous *per se,* it is error for the instructions to require a showing of malice, in order to recover punitive damages, since the malice which the law thus implies is sufficient to authorize such a recovery.

In Nicholson v. Merritt, 109 Ky., 369, the court said:

"The words charged, and which, in substance, are admitted by appellee in his testimony to have been spoken by him, are actionable *per se.* Kentucky Statutes, section 1; Nicholson v. Dunn, 52 S. W., 935; Same v. Rust, Id., 933, 21 Ky. L. R., 645. This being so, we do not think the court should have required the jury to believe the words to have been spoken 'maliciously' in instruction No. 1."

In Nicholson v. Merritt, 23 Ky. L. R., 2282, 67 S. W., 5, the court further said:

"As to punitive damages, the court instructed the jury that 'if they believed from the evidence the defendant in speaking and publishing such words, was actuated by malice in fact, then they may, in addition to compensating damages,' assess punitive damages. The words 'was actuated by malice in fact,' should have been omitted from th    instruction *   *   *. If the words

charged are false, and are such as to charge a crime, or such moral lapse as do words in the case at bar, they are maliciously uttered, in the eyes of the law, if they are not privileged. The public good, as well as justice to the injured party, demand that compensation certainly, and punishment by way of exemplary damages, according to the gravity of the wantonness or lack of it in the utterance of the falsehood, should be meted to the parties. * * *

"The instruction on this point approved by this court in the case of Nicholson v. Rust, *supra,* and applicable to this case, was in substance: 'In assessing such damages you must consider all the facts admitted to be true by the defendant as directed by the instructions herein, together with all the facts and circumstances proven in evidence before you; and may, in the exercise of a sound discretion, assess such punitive damages by way of punishment to the defendant as you may believe from the evidence the plaintiff ought to recover because of the speaking of the words.' "

In Courier-Journal Co. v. Sallee, 104 Ky., 341, especial complaint was made that the instruction authorizing punitive damages was not qualified by the use of the word "malice;" but in disregarding the complaint, the court said:

"There can be no doubt that in all actions for libel the gist of the action is malice, but it must be remembered that the law presumes that in the publication of an article which is libelous on its face it was published with malicious intent, and this presumption remains throughout the entire case until it is rebutted by proof of the contrary motive, or that the publication was justifiable; and nothing short of the truth of the matter published will excuse its publication. See Riley v. Lee, 88 Ky., 614 (11 S. W., 713). * * *

"In this State, in all actions for tort, punitive damages are allowed where the injury is the result of a wanton or grossly negligent act; and intent or purpose to injure is not a necessary ingredient. This is especially true where the words published are actionable *per se.*"

The charge of murder made against appellant, being, of course, libelous *per se,* under the rule deduced from the foregoing decisions of this court, the appellant was not required to show malice in order to recover punitive damages; the law implied malice under the admitted facts in this case.

In this respect the second instruction was erroneous. Judgment reversed and cause remanded for further proceedings.