## Marksberry v. Weir.

(Decided January 19, 1917.)

### Appeal from Daviess Circuit Court.

1. Libel and Slander—Words Actionable.—Where the plaintiff was employed at a salary of $100.00 a month as a tobacco "grader" for the Green River Tobacco Growers' Association, which was selling tobacco to the American Tobacco Company, and the defendant stated to third persons that the plaintiff was, at the same time, receiving a salary of $150.00 per month from the American Tobacco Company, thus representing both the buyer and seller in the transaction, the words were actionable per se, since they imputed the unfitness of the plaintiff to perform the duties of his employment, and prejudiced him in his profession.

2. Libel and Slander—Evidence in Mitigation of Damages.—Evidence of the previous existence of the slanderous report concerning the plaintiff, though not amounting to a justification of the defendant, was admissible in mitigation of damages.

3. Libel and Slander—Evidence of Previous Existence of Slanderous Reports.—Evidence of the previous existence of slanderous reports concerning the plaintiff is admissible under the general issue, because it would tend to negative the charge of malice and define the extent of actual damages done to the plaintiff by the defendant.

4. Libel and Slander—Evidence in Mitigation of Damages.—Evidence of the previous existence of slanderous reports concerning the plaintiff, though not amounting to a justification of the defendant, is admissible in mitigation of damages generally, and it is error for the court to restrict such evidence to a mitigation of punitive damages only.

5. Libel and Slander—Malice—Instructions.—Where the words declared upon are slanderous per se, it is error for the instructions to require a showing of malice upon the part of the defendant in order for the plaintiff to recover damages.

6. Libel and Slander—Words Actionable—Duty of Jury.—Where slanderous words are actionable per se, the court should not leave it to the jury to say what the defendant meant by making the charge, since the jury's only duty, in that respect, was to say whether the defendant made the charge. The absence of actual intent to injure furnishes no legal excuse.

W. T. ELLIS, J. J. SWEENEY and LITTLE & SLACK for appellant.

LA VEGA CLEMENTS, LOUIS I. IGLEHEART and CLEMENTS & CLEMENTS for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

In this suit for slander by Hiram Marksberry against James Weir, there was a verdict and judgment for the defendant. Marksberry appeals.

The Green River Tobacco Growers' Association is composed of tobacco growers in Kentucky and Indiana; and, through the agency of this association its members have, for many years, sold their crops of tobacco by "pooling" them with the association.

Whenever the pooled tobacco was sold, it was classified and graded by persons skilled in the trade, and known as "graders," who were employed and paid by the association. It was the duty of a grader to fairly and honestly grade the tobacco for the sellers so as to obtain a fair and just price according to its true grade; and, it was to the interest of the members of the association to obtain the highest proper grade for their tobacco, and thereby obtain the highest price for it. On the contrary, it would be to the interest of the purchaser to obtain the lowest grade of the same tobacco and thereby obtain it at the lowest price.

At the times mentioned in the petition, the American Tobacco Company was buying tobacco from the Green River Tobacco Growers' Association, and other like as-

sociations in Kentu ky and Indiana. The plaintiff, Marksberry, was employed by the Green River Tobacco Growers' Association as a "grader," at a salary of $100.00 per month, and had been so engaged for more. than three years next preceding January 1st, 1914; and, while in this service he was engaged in grading the tobacco which the association had sold to the American Tobacco Company.

The petition alleged that while Marksberry was in that service and while the association was delivering its tobacco to the American Tobacco Company, the defendant, Weir, falsely and maliciously said that "Hiram Marksberry while grading tobacco at Rockport, Ind., for the Green B?---or Tobacco Growers' Association, received $100.00 per month from the Green River Tobacco Growers' Association, and at the same time drew $150.00 per month from the American Tobacco Company, and that he could prove it;" and that Weir further said, "he had told the grand jury of Daviess county that Hiram Marksberry, while in the employ of the Green River Tobacco Growers' Association, grading tobacco at Rockport, the year previous, had been receiving $5.00 per day from the American Tobacco Company as its grader, and he could prove it."

The petition further alleged that in making the statements attributed to him, Weir meant to charge that while Marksberry was employed by the association and receiving a salary from it, he was secretly in the employment of the American Tobacco Company at a salary of $150.00 per month, or $5.00 per day, for the purpose of grading said tobacco at the lowest grade in order that the American Tobacco Company might obtain the tobacco at a lower price than its actual value, thereby charging Marksberry with having acted corruptly and dishonestly in the performance of his duties as a grader for the Green River Tobacco Growers' Association, and that he had accepted a bribe to betray the association that had employed him.

An amended petition further stated that plaintiff was at work for the Green River Tobacco Growers' Association as a grader of tobacco at the time Weir made the statements complained of, and that plaintiff had continued to fill said occupation of grader and to hold himself out for employment as a grader, ever since.

The answer is a traverse of the petition.

1. Appellee insists that the judgment should be affirmed, because the alleged scandalous language is not actionable in the absence of a showing of special damages, which was not attempted.

In Williams v. Riddle, 145 Ky. 454, 36 L. R. A. (N. S.) 974, it is pointed out that slanderous or actionable words are of two kinds: (1) those that are actionable in themselves, without proof of special damage or injury, and (2) those that are actionable by reason of some actual or special damage or injury sustained by the party slandered.

And, in designating the class of words falling within the first class as words actionable *per se,* the court in Williams v. Riddle made the five following specifications: (1) words, falsely spoken, imputing the commission of a crime involving moral turpitude, for which the party might be indicted and punished; (2) words imputing an infectious disease, likely to exclude him from society; (3) words imputing unfitness to perform the duties of an office or employment; (4) words prejudicing him in his profession or trade; and, (5) words tending to disinherit him. In all other cases, spoken words are either not actionable at all, or, are only actionable on proof of special damage. Axton-Fisher Tobacco Company v. Evening Post Company, 169 Ky. 76.

In view of the fact that Marksberry was a tobacco grader by profession or trade, and was then engaged in employment of that character, it would seem too apparent for serious argument that he brings his case within the third and fourth specifications of the rule above announced. Hargan v. Purdy, 93 Ky. 424; Fred v. Traylor, 115 Ky. 94; Spears v. McCoy, 155 Ky. 1.

The words alleged were actionable *per se,* because they prejudiced Marksberry in his profession and imputed to him unfitness to perform the duties of his employment. Nothing could be more injurious to a grader in the service of the tobacco association than to say of him that he was secretly the paid agent of the American Tobacco Company that was buying tobacco from the association, and whose interest in the grading of the tobacco was sharply antagonistic to the interest of the association. While an innuendo can not enlarge the meaning of the words spoken beyond their ordinary use and understanding, the words in this case needed no innuendo or inducement to carry the charge of dishonesty against

Marksberry in the performance of his duties to his employer.

Appellee's motion for a peremptory instruction was properly overruled.

2.  For a reversal it is claimed, that the court erred in permitting the appellee and his witnesses, over appellant's objection, to testify that they had heard neighborhood reports and rumors to the effect that appellant was guilty of the charge that had been made by the appellee.  There was no error here, since it is well settled in this state that although it is no justification to say that defendant merely repeated what he had heard, it is competent for the defendant, in an action of this character, to show in mitigation of damages, that the rumor was generally known in the neighborhood, although he will not be permitted to show, in detail, conversations had with different persons with regard to the alleged rumor.

In the early case of Calloway v. Middleton, 2 A. K. M. 373, 12 Am. Dec. 409, Chief Justice Boyle, speaking for the court, said:

"It is perfectly clear that the previous existence of the slanderous report, or the general reputation of the fact could not amount to a justification of the defendant in reiterating the charge; for everyone who gives currency to a slanderous report, becomes responsible for its truth; and most certainly neither general report nor general reputation is admissible evidence of the truth of a particular fact.  But malice is the gist of the action of slander, and the degree of responsibility of one who publishes slanderous words must be proportioned to the malignity of the motives with which he is actuated in making the publication.  Whatever, therefore, tends to diminish the malignity of the person who utters a slander, though not evidence of its truth, must lessen the degree of his responsibility; and, most indisputably, one who only gives currency to a report, already in existence, can not be guilty of the same degree of malignity as one who is the prime author or original fabricator of the slander.

"The evidence, therefore, of the previous existence of the slanderous report in question in this case, though not amounting to a justification of the defendant, was admissible in mitigation of damages.

"The weight of such evidence, and the extent to which it should operate to mitigate the damages, must depend upon the circumstances of the case, and on matters properly and exclusively belonging to the jury to determine, but can not affect the question of its admissibility. See the case of Kennedy v. Gregory, 1 Binney 35, and the case of Morris v. Duane, Ib. 90; in both of which cases a similar question occurred, and was decided in the same way."

Hart v. Reed, 1 B. M. 171; Nicholson v. Rust, 21 Ky. L. R. 648, 52 S. W. 933; Nicholson v. Merritt, 109 Ky. 371; Morgan v. Lexington Herald Co., 138 Ky. 637; and Reid v. Sun Publishing Co., 158 Ky. 727, are to the same effect.

3. Furthermore, mitigating facts may be shown under the general issue, because they would tend to negative the charge of malice and define the extent of actual damages done to the plaintiff. Hart v. Reed, *supra;* Nicholson v. Merritt, *supra.*

In Nicholson v. Merritt, *supra,* the court said:

"The court permitted evidence of general rumor of the plaintiff's unchastity to go to the jury, and gave instruction that such testimony should be considered only in mitigation. This was done under a general denial in the answer of the speaking of the words, and in this respect the case at bar differs from the two cases in which the same appellant was plaintiff, cited *supra,* in which the answer admitted the speaking of the words, but pleaded a lack of express malice and mitigating circumstances. At common law such testimony might have been introduced under the general issue. Matthews v. Davis, 4 Bibb. 173. See, also, 13 Enc. Pl. & Prac., p. 71. Our code provision (Civ. Code Prac., section 124) which permits the pleading of mitigating circumstances in connection with a plea of the truth of the alleged libel or slander does not seem to us to have changed the common-law rule in this respect, and we think, therefore, that the mitigating circumstances might properly be shown without a plea setting them forth."

4. The fourth instruction, however, directed the jury that it might consider these rumors in mitigation of any punitive damages, but that it could not consider them in mitigation of compensatory damages. We do not understand that the rule admitting proof of this character should be confined to the mitigation of punitive damages, alone. It should go to the mitigation of

damages generally; and, in limiting its effect, as it did, the fourth instruction was erroneous, although not prejudicial to appellant. We have passed upon the question, however, in view of the possibility of another trial.

5. By the first instruction the court required the jury to believe the words were maliciously spoken before they could find for the appellant; and of this he complains, insisting that this requirement violated the rule laid down in all the cases. The complaint is well founded. In ordinary slander the question of malice is never submitted to the jury except as to the amount of damages. Newell on Def., p. 345, sec. 54.

In Reid v. Sun Publishing Co., 158 Ky. 732, the rule upon this subject was stated as follows:

"The general rule is that where the publication is libelous *per. se,* the law presumes malice and authorizes a recovery of punitive damages. Tanner v. Stevenson, 138 Ky. 578, 30 L. R. A. (N. S.) 200; Pennsylvania Iron Works Co. v. Henry Vogt Machine Co., 139 Ky. 497, 8 L. R. A. (N. S.) 1023.

"It is not necessary that the publication be made maliciously in order to authorize a recovery of punitive damages. 'If, as a matter of fact, the words published were false, and tended to the injury of plaintiff, and were published recklessly, even without special ill-will, defendant is equally guilty, and punitive damages may be recovered.' Courier-Journal Co. v. Sallee, 104 Ky. 344.

"It must follow, therefore, that if the words be libelous *per se,* it is error for the instructions to require a showing of malice, in order to recover punitive damages, since the malice which the law thus implies is sufficient to authorize such a recovery."

Nicholson v. Merritt, 109 Ky. 369, is to the same effect.

6. The first instruction further authorized a recovery in case the jury should believe from the evidence that the defendant uttered the words charged in the petition, and meant thereby to charge, and did charge the plaintiff with a lack of integrity, or having acted corruptly or dishonestly in the performance of his duties as a grader, and that the plaintiff had accepted a bribe. In putting this qualification upon appellant's right to a recovery, the first instruction was erroneous.

The words charged being actionable *per se,* it was not for the jury to say what the defendant meant by making the charge; its only duty, in this respect, was to say whether he made the charge. The absence of actual intent to injure furnishes no legal excuse. Newell's Slander & Libel, 270, 275; Nicholson v. Merritt, 23 Ky. L. R. 2281, 67 S. W. 51; 25 Cyc. 371.

In Triggs v. Sun Printing & Publishing Association, 179 N. Y. 144, 103 Am. St. Rep. 841, 66 L. R. A. 612, where a newspaper stated that Professor Oscar Lovell Triggs, of Chicago University, was illiterate, uncultivated, coarse, and vulgar, with sensational, absurd, and foolish ideas; that he was egotistical and conceited in the extreme, and made himself ridiculous in his method of instruction, and by his public lectures; and that he was unable to name his baby until after a year of solemn deliberation; it was held to be no defense that the publication was made in jest.

Evidence as to what defendant said when he testified before the grand jury was properly excluded.

For the errors contained in the first instruction the judgment is reversed and the cause remanded for a new trial.