MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v.
Z. T. BELEW.

Decided December 9, 1899.

### 1. Railway Company—Public Highway—Ordinary Care.

Where a railway company has for more than ten years permitted a public road to run along and on its right of way, it is bound to use ordinary care in the operation of its trains to avoid injury to travelers on such right of way resulting from such operation.

### 2. Damages for Personal Injuries—Proof that Expenses Were Reasonable.

In an action for personal injuries, a recovery for expenses of nursing, medicines, and medical attention is not warranted in the absence of proof that the charges therefor were reasonable.

### 3. Same—Error Not Cured by Remittitur.

Where, in an action for personal injuries, the petition alleges the expenses incurred for nursing, medicines, etc., in general terms, and the verdict is also general and for a single sum, an error in charging that the jury might consider such expenses in estimating the damages, there being no evidence that the expenses were reasonable, can not be cured by a remittitur, since the amount allowed for such items can not be determined.

APPEAL from Hunt. Tried below before Hon. T. D. MONTROSE, Special Judge.

*T. S. Miller* and *Head, Dillard & Muse,* for appellant.

*Evans & Elder,* for appellee.

CONNER, CHIEF JUSTICE.—This is a suit for damages on account of personal injuries alleged to have been done appellee, and occasioned by the negligence of appellant. The injuries were received on or about appellant's right of way in Hunt County, and were occasioned by a horse driven by appellee becoming frightened at an approaching and passing train and running away, kicking the buggy to pieces and injuring appellee. The trial resulted in a judgment for appellee in the sum of $1750.

The facts show that in the vicinity of the accident or injury in question appellant's line of railway extended approximately north and south, and that what is known as the Emory and Lone Oak road approached the right of way from the southwest at an angle of about 45 degrees. It thence extended on the right of way for the greater part of the distance, about 400 yards. The road then turned west to Lone Oak.

The proof shows that upon the day in question appellee, driving a single horse to the buggy and with the top up and back curtain down, drove on the right of way in question on his way to Lone Oak. Before getting on the right of way he stopped and listened and looked, but saw or heard no approaching train. He then continued his journey, and when at some point between where he drove onto the right of way and where the road turns west to Lone Oak, he heard the noise of an approaching train, whereupon he whipped up his horse in the effort to get out of the lane at the point where the road turns west to Lone Oak, but was unable to do so before the train ran up behind him. The animal he was driving became frightened and ran, and about the time the train got even with him began to kick, wrecking the buggy, kicked appellee a number of times, and seriously injured him.

It is an open level prairie country for some distance on either side of the locus in quo. It is slightly down grade for some distance, to a point near a crossing between the point of approach and departure as above indicated, and from thence extending north for some distance it is up grade. The train made but little noise coming down said grade, but in going up the noise was increased. The road in question, it appears, had been in use many years, and had in fact been a public road prior to the location and construction of the railway in question, and thereafter had extended and had been continuously used as stated for more than ten years prior to the accident. A logical inference from the testimony is that in going to the point of appellee's destination there was no other way to travel. Appellee had traveled this road but a few times.

It was alleged that appellant was guilty of negligence in the manner of the approach of its train at the time in question, and in the failure to give the proper and usual signals, and to slacken the speed and abate the noise of the approaching train; that appellant's employes and servants in charge of the train saw, or by the exercise of reasonable diligence could have seen, appellee's perilous position and have avoided the injuries.

On the trial the court, among other things, charged the jury that if they "believed from the evidence that the employes of the defendant com-

pany in charge of said train knew that the said animal was frightened and running away, or by the exercise of ordinary care they could have known this fact (if it was a fact), and that such fright was caused by the approach of such train and the noise thereof, and that the employes in charge of said train could, by the exercise of ordinary care, have slackened the speed or lessened the noise of said train, then a failure to do so was negligence," as before defined.

Appellant in its first, eighth, ninth, tenth, eleventh, and fifteenth assignments of error, in objections to the charge given and to the refusal of special charges requested, insists that the court was in error in placing upon appellant in his charge the burden of ordinary care to ascertain appellee's position. It is insisted that the true rule of law in such case is that appellant would only be liable if the employes in charge of the train actually saw that the animal was frightened and running away, and they knew such fright was caused by the train; and the cases of Hargis v. Railway, 75 Texas, 19, and Pasture Company v. Railway, 41 Southwestern Reporter, 190, are invoked as sustaining this position. It is insisted, in effect, that appellee was a trespassser upon appellant's right of way, and that it was not incumbent upon those operating its trains to keep a constant lookout to avoid injuries to those thereon without right.

We are of opinion that the principle announced in the cases cited and contended for herein is not applicable to the facts of this case. In the record before us it is unquestioned that the traveling public used the road as it was used by appellee for many years without protest appearing in the record on the part of appellant. Whether this amounts to a license or a mere permissive use, we think, under such circumstances, appellant would be required, and its agents and employes would be required, to exercise ordinary care to avoid injury. While the engineer on the train in question testified that he did not see the runaway in question, nor even remember to have passed there that day, yet he further testified that his duty required of him to keep a lookout. The existence and use of the road in question must have been known to appellant. It must have known that passing trains were liable to frighten passing teams, and that injuries might result therefrom, and the law under such circumstances would certainly impose upon them the duty of exercising at least ordinary care to avoid such consequences.

In the case of Railway v. Crosnoe, 72 Texas, 79, where one was injured in crossing the railway tracks at a place not a street or highway, that had been habitually used as such crossing, the court approved the refusal of a special charge embodying the very principle herein insisted upon in behalf of appellant, and said: "Nor can we assent to the proposition urged by appellant, that persons crossing the switch track under such circumstances were entitled to no care for their safety from the employes in moving the cars, unless the danger should be seen."

In Railway v. Sympkins, 54 Texas, 615, in which it was in issue whether the appellee therein, Sympkins, had been providentially stricken down by a fit at a point on the railway to which the public had no right

of access, and whether the engineer by keeping a proper lookout could have discovered him in time to have stopped the train and have avoided the accident, the trial court instructed the jury: "If the evidence satisfy you that the engineer could by the use of due and proper care and attention have discovered the plaintiff on the track in time to have stopped without running over him, then his not doing so is such negligence as will render defendant company liable to plaintiff. The defendant asked charges embodying the proposition "that unless the engineer actually saw Sympkins a sufficient length of time and distance to stop the train and prevent the injury, the company was not liable," and another denying that "as to persons wrongfully on the track the law imposed on the railroad company any duty to keep a lookout," etc. The Supreme Court in passing on the question say: "We do not assent to the proposition that a railroad company may not become liable to one who is run over and injured by reason of the want of watchfulness of its servants, although such person may have been originally a trespasser on the track," and after referring to the fact that authorities are conflicting, state: "We prefer that line of decisions holding railroads bound to exercise their dangerous business with due care to avoid injury to others, as correct in principle and sound in policy, and as protecting even a trespasser who is not guilty of contributory negligence."

In the case of Railway v. Watkins, 29 Southwestern Reporter, 233, where Mrs. Watkins was injured along a footpath in common use by pedestrians by the side of the railway track, and where it appeared that the engineer in charge of the passing engine in fact did not see her until after the injury, the Supreme Court very clearly lay down the doctrine that the law imposes the duty to keep a lookout and use ordinary care to avoid injury to those who may be on or along the railway track. See also the case of Railway v. Traub, 19 Texas Civ. App., 125.

Said assignments are overruled.

In the general charge and in a special instruction given at the request of appellee, the jury were instructed that if they should find for plaintiff they should find for him as damages among other things, such "sum as will reimburse him for necessary and reasonable expenses incurred by him for nursing and medicine and medical attention." This charge is questioned in the sixth assignment of error, on the ground that "there was no evidence as to what was the cost of these items or as to what would be a reasonable cost for the same," and we are of opinion that the assignment must be sustained.

The evidence tends to show that appellee was seriously injured, and was confined to his bed and room for several weeks, but the record is entirely silent as to what nursing, if any, and what medicines, if any, were necessary, or what was the reasonable cost thereof. The only evidence on this point that we find or that is cited by appellee in answer to this assignment is the following: Appellee, while testifying as a witness, was asked this question: "Did you incur any expense for nursing, physicians, and medicines during the time you were injured?" To which he

answered: "Well, the doctor's bill, I suppose they charged me. I haven't paid anything. Dr. Coppage said his bill was $15, and Dr. Mitchell's was $10."

It is a familiar rule that it is error for the court to submit to the jury an issue not supported by evidence. An instance of its application to items of the kind now in question may be found in the case of Railway v. Richards, 20 Texas Civil Appeals, 203, in which Judge Williams, speaking for the court, says: "If any recovery was to be had for such expenses (medical expenses), the evidence should have shown the amount of the outlay. If there was no proof of such amount, no recovery for such expense was allowable. But the charge permits recovery though there be no proof." See also Railway v. Kimbell, 43 S. W. Rep., 1049.

But if it be said that the charge of the physicians included charges for nursing and medicines as well as for medical attendance, and that the answer of appellee, therefore, when considered in connection with the question, is some evidence that appellee incurred expense for nursing and medicines, there is nevertheless no proof whatever that the charges made were reasonable. This court in the case of Railway v. Warren, 39 Southwestern Reporter, 653, sustained a charge submitting the item of a physician's bill, on the ground that the amount of the bill and the character of the service shown was some evidence in support of such item; but a writ of error was granted by our Supreme Court, and Chief Justice Gaines, in disposing of the point, says that at the time the application for the writ of error was passed upon "we were of opinion that the evidence was not sufficient to warrant a recovery for the charge contracted by the plaintiff by reason of the treatment of the physician. The only testimony on that point was that of the plaintiff, which showed merely that the physician charged him $150 for his services. We thought the *reasonable value of such services should have been proved.*" (The italics are ours.) While in the Warren case the judgment was affirmed, it was on the ground that a remittitur had been filed.

Nor can the error herein be cured, as we conceive, by a remittitur, as was done in the Warren case. The petition herein alleged in general terms expense incurred for nursing, medicines, and medical attendance, but no amount was specified. The verdict was also in general terms, and we are unable to determine the amount that the jury may have assessed as damages on account of these items.

It is also insisted that the court erred in refusing certain special charges relating to the question of contributory negligence. We find no error in this. The court in the charges given submitted the issue of contributory negligence very fully, and among the facts alleged as constituting such negligence it was not averred that appellee was negligent in failing to put back his buggy top before driving on the right of way.

Other assignments need not be noticed. We find no reversible error therein. But for the error discussed, the judgment below must be reversed and the cause remanded for another trial.

                                        *Reversed and remanded.*