OLD RIVER RICE IRR. CO. v. STUBBS.†

(Court of ·Civil Appeals of Texas. April 14, 1911. Rehearing Denied May 4, 1911.)

1. EVIDENCE (§ 463*) — PAROL TESTIMONY— AMBIGUITY—REASONABLE WATER RENT.

Where defendant agreed to pay a "reasonable rent" for water to be furnished him each year for irrigating purposes, there is no such ambiguity as to permit parol testimony that "reasonable rent" meant one-fifth of the crop.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2140–2143; Dec. Dig. § 463.*]

2. WORDS AND PHRASES—"REASONABLE VALUE."

Reasonable value, like market value, is sometimes difficult to ascertain and fix with certainty, and depends upon the surroundings and conditions existing at the time it is sought to be ascertained.

3. EVIDENCE (§ 465*) — PAROL TESTIMONY— SUBSEQUENT ALTERATIONS.

Where defendant agreed to pay plaintiff a "reasonable water rent" for water to be furnished for irrigation purposes, evidence of a subsequent verbal agreement that plaintiff, instead of an indefinite amount, should receive a stated fraction of the crops each year, was not inadmissible as varying the terms of the written contract, as it was competent for the parties to make the change after the execution of the original contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2144; Dec. Dig. § 465.*]

4. CONTRACTS (§ 65*)—SUBSEQUENT CHANGES —CONSIDERATION.

Where a written agreement was subsequently changed by parol, so that, instead of a reasonable water rent, plaintiff was to receive for irrigating defendant's land one-fifth of the crop, such subsequent agreement was supported by a sufficient consideration, viz., the promise of defendant to give one-fifth of his crop, and the promise of the plaintiff to accept same in lieu of the reasonable money value of the water furnished.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 234, 267, 292, 293; Dec. Dig. § 65.*]

5. CONTRACTS (§ 346*) — VARIANCE — SUBSEQUENT AGREEMENT—PLEADING.

Where a petition alleged that a parol agreement changing a written contract was made "on or about the time of the making of the written contract and was made before any water was furnished under such contract," it was sufficient to admit proof of the subsequent agreement.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1718–1753; Dec. Dig. § 346.*]

6. WATERS AND WATER COURSES (§ 247*)—IRRIGATING CONTRACT — EVIDENCE — AMOUNT OF DAMAGES.

In an action on an irrigating contract, where defendant counterclaimed for damages for insufficient supply of water, evidence held to show that the allowance to defendant was excessive.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 247.*]

7. APPEAL AND ERROR (§ 1140*)—REVERSAL— OFFER TO REMIT EXCESS DAMAGES.

When defendant in his brief offers to remit excess damages awarded him in the trial court, there is no necessity for a reversal of the judgment, where it is otherwise correct.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4462–4478; Dec. Dig. § 1140.*]

8. APPEAL AND ERROR (§ 1151*)—DISPOSITION OF CAUSE—REFORMING JUDGMENT.

Where the undisputed evidence as found in the record and the findings by the trial court are sufficient to enable the appellate court to reform a judgment, it is not reversible error that the judgment does not describe with sufficient certainty a portion of a rice crop awarded by the trial court to plaintiff, or that no judgment is given plaintiff for the value of the rice if it is not delivered or cannot be found by the officer executing the writ.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1151.*]

Appeal from District Court, Chambers County; L. B. Hightower, Judge.

Action by the Old River Rice Irrigation Company against F. H. Stubbs. From a judgment for defendant, plaintiff appeals. Reformed and affirmed.

Davis & Marshall, Lane, Wolters & Storey, and Wm. A. Vinson, for appellant. Dougherty, Conley & Gordon, for appellee.

PLEASANTS, C. J. This suit was brought by appellant against appellee to recover the sum of $3,400 alleged to be due as water rent for the year 1909 on a crop of rice grown by appellee on his farm of 425 acres adjoining appellant's irrigating canal in Chambers county. It is alleged in the peti· tion that appellant furnished water for said rice crop at the special instance and request of appellee, and that the reasonable charge for said water was the sum of $8 per acre, for which amount, aggregating the said sum of $3,400, judgment is prayed. In addition to a general demurrer and general denial, the defendant's answer contains the following special plea: "And, specially answering herein, this defendant would respectfully show to the court that plaintiff is a corporation duly incorporated and· doing business under and by virtue of the laws of the state of Texas, with its principal office in Chambers county, Tex., and that on or about the 10th day of November, 1903, he and plaintiff entered into a written contract, by the terms of which and in consideration of the covenants

---

therein contained, to wit, that he, the said defendant, would deed to the said plaintiff a strip of land 40 feet wide over his 427.7 acres, a part of the Charles Tilton survey, situated on the west side of Old river about 5 miles above its junction with Trinity river, in Chambers county, Tex.; that it, the said plaintiff, would furnish him his equal pro rata of water for irrigating his rice crops during the farming seasons, he paying the reasonable water rent therefor; that, acting under and by virtue of said contract, he did in fact deed to the said company for its canal purposes the land hereinabove described, which said company took possession of said land, and on or about the year 1903 constructed its canal over and across said land, and since said time has been using and operating the said canal for the purpose of irrigating rice crops raised and grown on the adjacent lands to its said canal; that on or about the time that plaintiff and defendant entered into said contract, and before any water was furnished thereunder, it was understood and agreed by and between plaintiff and defendant that "a reasonable water rent" as provided for in said contract should be construed to mean one-fifth part of the said rice crop raised each successive year; that beginning with the rice season of 1906, and continuing through every crop season thereafter, this defendant has grown and raised a rice crop on his said lands hereinabove described and adjacent to said canal; that during the seasons of 1906, 1907, and 1908 the said plaintiff company watered and irrigated his said rice crop for one-fifth of the crop grown on his said land, which said rent, plaintiff alleges, is a reasonable water rent under the terms of said contract, and was the rent theretofore agreed upon by and between said plaintiff and defendant." Defendant also alleged that he had tendered to the plaintiff one-fifth of his crop for the year 1909, which tender was by the plaintiff refused. He also, by way of cross-action, prayed for the recovery of the sum of $1,163.90 damages by reason of the alleged failure of the plaintiff to furnish him an adequate supply of water to water his Japan rice for the year 1909. To the answer of defendant plaintiff interposed several special exceptions, and answered thereto by general denial and by special plea that defendant had received his pro rata of water for the year 1909, but that, owing to an invasion of salt water in the latter part of the season, the quantity of fresh water at plaintiff's disposal was greatly lessened, and that such occurrence was a matter over which it had no control.

On the trial of the case by the court without a jury, judgment was rendered that defendant should pay, and the plaintiff should receive, one-fifth of the rice crop grown upon defendant's land, as rental for the water furnished him by the plaintiff, and that defendant should recover from the plaintiff the sum of $857.11 damages on account of the failure of the plaintiff to furnish an adequate supply of water for watering defendant's Japan rice crop for the year 1909.

At the request of appellant, the trial judge filed the following findings of fact and conclusions of law:

"The court finds:

"That the plaintiff is a quasi public corporation, duly incorporated under and by virtue of the laws of the state of Texas, and is engaged in the business of furnishing water to the public for the purpose of irrigation, and that it maintains a canal in Chambers county, Tex., and through the following described lands of the defendant, F. H. Stubbs, to wit, 427.7 acres out of the Charles Tilton survey, situated on the west side of Old river about five miles above its junction with Trinity river, in Chambers.county, Tex., and that said canal is also adjacent to 80 acres of land out of the Charles Rector survey in said county, belonging to said defendant."

That on or about the 10th day of November, A. D. 1903, the plaintiff and defendant entered into a written contract, by the terms of which and in consideration of the covenants therein contained, which said agreement and covenants are expressed in a deed from defendant to plaintiff for a right of way 40 feet wide for its canal over 427.7 acres of land belonging to said defendant, said land being situated in Chambers county, Tex., and a part of the Charles Tilton survey, on the west side of Old river and about five miles above its junction with Trinity river in said county, and said agreement and covenants being as follows, to wit: That in consideration of such right of way "it is agreed on the part of said canal company to furnish the said Stubbs his equal pro rata of water for irrigating his rice crop during the farming season, he paying the reasonable water rent therefor. A completion of said canal over said land, together with the other stipulations herein stated, shall be considered an adequate consideration for the right of way over said lands herein conveyed." That the defendant company took possession of said right of way and constructed its canal thereon and across said land, and since said time has been using and operating the said canal for the purpose of irrigating rice crops raised and grown on the land reached and watered by said canal.

That although the said contract above set forth in section No. 2 hereof is in the singular—that is, that the company would furnish defendant his equal pro rata of water for the farming "season"—the same was a mutual mistake, and that plaintiff and said defendant agreed and understood that the said contract was an obligation to furnish water to said defendant for all farming seasons, and that said contract has been so interpreted by the parties and that said canal company did as a matter of fact, as soon as the canal was constructed and completed to defendant's land, about the year 1905, and for

every crop season since that time, to wit, for the years 1906, 1907, 1908, and 1909, furnish him water thereunder.

That before any water was furnished under said contract to defendant said plaintiff and defendant fixed, determined, and construed a "reasonable water rent" as provided for in said contract as one-fifth of the rice crop grown by defendant upon the land irrigated by said canal company for each season, and that this fact is established by the undisputed evidence.

That during the crop season of 1909 defendant planted 250 acres of his said land in Honduras rice and 175 acres in Japan rice, and that the same came up to a good stand and was cultivated in a good and workmanlike manner. That demand was made by defendant upon plaintiff company for his pro rata of water, as and when said crop needed and required same, and that plaintiff company complied therewith and furnished sufficient water for watering his Honduras rice, and that he raised 3,017 sacks of Honduras rice on said 250 acres, but that the defendant company failed, refused, and neglected to give defendant his equal pro rata for the second watering of his 175 acres of Japan rice, and that it did not give him any water at all on 30 acres of his said Japan rice, and that, had said plaintiff exercised ordinary care in the matter of the distribution of said water to said 175 acres of said defendant, the said defendant would have received a sufficient amount of water to have properly and efficiently watered his 175 acres of Japan rice, and that, by reason of such failure, refusal, and neglect upon the part of plaintiff company to give defendant his equal pro rata of water, his Japan rice crop was short 2½ sacks to the acre.

That, by reason of the insufficient amount of water given to said defendant, he was only able to raise on said 175 acres of said land, and did raise, but 1,307 sacks of Japan rice of an average weight of 200 pounds to the sack. That had said defendant been given his equal pro rata of said water, as provided for in said contract, his 175 acres of land planted in Japan rice would have yielded 1,750 sacks of Japan rice of an average weight of 200 pounds to the sack, and that defendant's crop is therefore short 443 sacks of Japan rice. That the cost and expense of cutting, stacking, hauling to threshing machine, threshing, sacking and marketing the crop he did make, and which he also would have made had he been given the proper amount of water to have made a full crop, was 48 cents per sack. That one-fifth of the 443 sacks of Japan rice which he would have made had he been properly watered belonged to plaintiff company, and the balance, to wit, 354⅘ sacks would have been the property of defendant. That the market value of Japan rice at the time of threshing said Japan rice, as agreed upon between the parties, was $2.45 per barrel of 162 pounds each.

That, after deducting the cost and expense as aforesaid which defendant would have incurred in raising the additional 443 sacks of Japan rice, the net value of said 354⅘ sacks was the sum of $857.11.

That prior to the institution of this suit, and at the time of threshing said Japan rice, and also at the time of threshing the said Honduras rice, defendant tendered and offered to plaintiff one-fifth of the entire rice crop grown during the season of 1909 in payment of the water rent, but that plaintiff refused to accept the same and insisted upon the payment of $8 per acre for said water rent.

### Conclusions of Law.

"I conclude that the plaintiff company was obligated and bound under the contract of date of November 10, 1903, to furnish plaintiff water for irrigating his rice crop for the season of 1909 for a water rental of one-fifth of the rice crop grown by him on the land described in his first amended original answer and cross-action, and that plaintiff's portion of said rice is as follows, to wit, 261 sacks of Japan rice and 604 sacks of Honduras rice, which amount plaintiff should receive as full satisfaction for its said water rental, and that defendant owes to plaintiff the said number of sacks of rice, and that it, plaintiff, is entitled to recover the same.

"I further conclude that plaintiff damaged defendant by reason of the insufficient water supply to his Japan rice raised on said 175 acres in the sum of $857.11.

"I also conclude that defendant having tendered to said plaintiff the one-fifth of said total rice crop of 1909 in the payment of said water rental at the time of harvesting the same, and plaintiff having refused to accept said rice as payment for its water rental, that all costs of suit incurred herein be taxed against plaintiff."

The evidence upon which the trial court based the finding that, before any water was furnished under the written contract before set out, the parties to said contract agreed with each other that a "reasonable rent" for the water furnished under the contract should be one-fifth of the rice grown by the defendant upon the lands irrigated by plaintiff under said contract for each season such lands were so irrigated, is the testimony of the defendant, which is undisputed, and which is, in substance, that in 1906, the first year in which water was furnished him by the appellant under said contract, and before any water was furnished thereunder, he entered into an agreement with appellant through its president, Dr. Shearer, that one-fifth of the rice raised by appellee on the land irrigated by appellant should be considered a "reasonable water rent," as that term is used in said contract. Under this agreement, appellant watered appellee's rice crops for the years 1906, 1907, and 1908, and received as water rent one-fifth of the crop.

In 1907 Dr. Shearer wanted appellee to pay $8 per acre as water rent, but he refused to do so, claiming that he had the agreement before mentioned, that one-fifth of the crop should be regarded as a "reasonable rent" under said contract. When appellee refused to pay the $8 per acre, and reminded Dr. Shearer of the agreement, he, Shearer, said: "By gad, Stubbs, it is not me, it is them other fellows. I told them they could not do it because we had a special contract with you." Appellee further testified: "I did not plant rice there in 1905, but I did in 1906. I planted my first crop that year. That was the year I and Dr. T. W. Shearer had this understanding. That understanding between Dr. Shearer and I was, I was to pay one-fifth. As to whether that was to apply to that particular year, I understood that it was for all time, just the same as a contract. As to what I said about it at the time, that is all we did say, I wanted to know what I had to pay. I did not make that agreement just for that year. I was making it for all time. The reason I went back the next year, 1907, and went to see Dr. Shearer again, was because of the word he sent me and that word was he sent me that I had to pay $8 per acre and farm my own land. In 1906, when I made that agreement, I stated that applied for all time as long as that contract should exist. That is the way I understood it."

All of this testimony was objected to by the appellant upon the grounds stated in the first assignment of error, which is as follows: The district court erred in admitting in evidence the testimony of F. H. Stubbs, to the effect that under the contract executed in 1903 by the parties he had an oral understanding with the president of plaintiff company in 1906 that a reasonable rental should be construed to be a one-fifth rental, and that for the year 1907 he paid one-fifth of the crop, for the reason that same was setting up a parol agrement, not pleaded by defendant, and was modifying a written contract by parol evidence three years after same was entered into, and because it was not binding on the parties for the year 1909, in the absence of agreement. All of which is fully set forth in bill of exception No. 1 here referred to." The propositions submitted under this assignment are as follows: "The stipulation in the written contract that appellee should pay appellant for watering his rice crop 'the reasonable water rent therefor' is clear and unambiguous, and needs no explanation. Therefore the only effect of the testimony complained of was to vary the terms of the written contract, upon which the minds of the parties had already met, and to add new ingredients thereto. It was error to admit the testimony complained of for the further reason that there was no pleading under which the same could be introduced. The testimony tended to show a subsequent parol agreement that defendant should pay for water service in rice, whereas, the allegation was that the parol agreement was entered into 'on or about the time of the making of the written contract in 1903.' The proof, therefore, does not correspond to the allegation, and should have been rejected on that ground."

[1] We agree with appellant that the written contract is not ambiguous, and the admission of the testimony objected to cannot be sustained on the ground that it explains an ambiguity in the written contract. The meaning of the contract is perfectly plain, and under it appellee agreed to pay a reasonable rent for the water furnished him each year.

[2] Reasonable value, like market value, is sometimes difficult to ascertain and fix with certainty, and depends upon the surroundings and conditions existing at the time it is sought to be ascertained, but there is no ambiguity in the use of these terms. The meaning of the parties expressed by the term "reasonable rent" is just as plain as if they had fixed a definite amount per acre to be paid as water rent.

[3] The testimony of appellee does not tend to show that, when he and appellant in executing the contract used the term "reasonable water rent," they intended thereby to mean one-fifth of the crop, and it was not introduced, and would not have been admissible, for this purpose. The testimony does show, however, an agreement of the parties to change the original contract, so that in lieu of the indefinite and probably variable amount that appellant should receive for water each year he should have a definite proportion of the rice crop raised by appellee upon the lands irrigated by appellant under the contract. It was entirely competent for the parties to make this change in the contract after its execution.

[4] The agreement to so change the contract was supported by a sufficient consideration, viz.; the promise of appellee to give one-fifth of his crop and the promise of appellant to accept same in lieu of the reasonable money value of the water furnished by it. This was not a prior nor a contemporaneous agreement varying the terms of a written contract, but a novation or change in the contract made subsequent to its execution and supported by a valid and sufficient consideration.

[5] The objection to the testimony presented by the second proposition above set out is also without merit. The allegation that the agreement to change the contract was made "on or about the time of the making of the written contract" was sufficient to admit proof of the execution of said agreement subsequent to the date of the execution of the written contract. The petition further alleged that such agreement was made "before any water was furnished un-

der said contract." We think evidence showing that the agreement was made subsequent to the execution of the written contract, but before any water was furnished appellee thereunder, was not objectionable on the ground that it did not "correspond with the allegations of the petition." We think neither of the propositions above set out should be sustained, and the assignment is therefore overruled.

The second and third assignments complain of the judgment on the ground that it is not supported by the evidence. It is not contended under these assignments that the testimony before referred to, if admissible, is not sufficient to sustain the judgment, but it is insisted that this testimony should have been excluded upon the objections made by appellant, and therefore the judgment is without legal evidence to support it.

What we have said in discussing the first assignment disposes of this contention, and the second and third assignments are also overruled.

[6] The fourth assignment of error complains of the judgment in favor of appellee on his claim for damages on the ground that the finding of the court that appellee sustained damages as alleged in his cross-bill to 175 acres of the rice crop grown by him during the season of 1909 is not supported by the evidence, in that there is no evidence that there was any damage to more than 150 acres of said crop.

This assignment must be sustained. As shown by the finding of fact before set out, the court found that 175 acres of appellee's Japan rice produced 2½ sacks of rice less per acre than it would have done if appellant had furnished a sufficient quantity of water to properly irrigate the crop, and judgment was rendered in favor of appellee for the value of that amount of rice. Appellee by his testimony does not fix the amount of acreage on which this shortage occurred with any certainty. His testimony upon this issue is as follows: "On this 175 acres I know there is some of that took up with levees and ditches, and, of course, there would not be 175 acres that I had in cultivation in rice there. There would not be that much. If you count out the ditches and levees, there would not be that much. I have never made any estimate of how much there would have been. * * * I do not know how much it will take of the land, and I do not know whether it will take a tenth or a fifth, or what amount it will take of the land. I know it will take some of it. Yes, sir; I estimated it would be as much as 150 acres left there after cutting out the levees, canals, and ditches—and more too.. I do not know how much it would be." This testimony does not sustain a judgment for damages to more than 150 acres of rice.

[7] Appellee offers in his brief in event this court should sustain this assignment to remit one-seventh of the damages found by the trial court, this being the proportion which the excess of acreage found by the court (25 acres) bears to the whole amount of acreage for which damages were awarded by the judgment. This offer to remit renders a reversal of the judgment, because of the error pointed out under this assignment, unnecessary.

[8] The fifth and sixth assignments complain of the judgment, in that the one-fifth of the rice crop awarded the appellant is not described with sufficient certainty to identify it, and no judgment is given appellant for the value of said rice in event it is not delivered to it by appellee, or cannot be found by the officer executing the writ of possession.

These objections to the judgment are well taken, but the undisputed evidence in the record and the findings of fact by the trial court furnish sufficient data to enable this court to reform the judgment, in the respects complained of.

The remittitur, above mentioned, will be entered and the judgment reformed as indicated, and as so reformed is affirmed.

Reformed and affirmed.