## HOUSTON CHRONICLE PUB. CO. v. WEGNER. (No. 7004.)

(Court of Civil Appeals of Texas. Galveston. Dec. 11, 1915. On Motion for Rehearing, Jan. 22, 1916.)

**1. LIBEL AND SLANDER ☞10 — ACTIONABLE WORDS—MISCONDUCT IN OFFICE.**

A newspaper publication that, as a result of an article printed in a Galveston paper, the city commissioners appointed a committee to investigate the charge that plaintiff, contrary to law, had his son on the city pay roll as confidential clerk, which charge had not been made by any one except defendant, and which, as published, was untrue, was a charge that plaintiff put his son on the pay roll intending that he should draw money from the city contrary to law, although it did not charge that any money was ever paid to plaintiff's son, that the city ever sustained any loss by any fraud or secrecy practiced by plaintiff, or that the city was in any way defrauded, and was libelous per se.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 41, 91–96; Dec. Dig. ☞10.]

**2. LIBEL AND SLANDER ☞56 — DEFENSES — REPETITION.**

The fact that such false charge or statement published by defendant simply purported to be a statement or charge made by another, and that defendant itself neither asserted such charge to be true, or vouched for the truth thereof, did not relieve the publication of its libelous character.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 153–156; Dec. Dig. ☞56.]

**3. APPEAL AND ERROR ☞930—PRESUMPTIONS —INSTRUCTIONS FOLLOWED BY JURY.**

In an action for libel a refusal to strike so much of the amended petition as set up a publication on a certain date was not error, where the court instructed that no libel could be predicated on that publication, since it would be presumed, without any showing to the contrary, that the jury obeyed the instructions given.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3755–3761; Dec. Dig. ☞930.]

**4. LIBEL AND SLANDER ☞33 — DAMAGES — GENERAL DAMAGES—ELEMENTS.**

In an action for the publication of a false and libelous charge of plaintiff's misconduct in his office as chief of police, plaintiff was entitled to recover general damages without proof other than the fact of the libel.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 112, 277; Dec. Dig. ☞33.]

**5. LIBEL AND SLANDER ☞124 — DAMAGES — SPECIAL DAMAGES—INSTRUCTIONS.**

An instruction submitting as special damages items which would properly come under the head of general damages was technical error.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 365–370, 372, 373; Dec. Dig. ☞124.]

**6. APPEAL AND ERROR ☞1140 — HARMLESS ERROR—INSTRUCTIONS.**

Such error was harmless, where all the items of damages allowed under the charge on special damages could have been recovered under the head of general damages; and the court on appeal required plaintiff to file a remittitur before affirmance.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4462–4476; Dec. Dig. ☞1140.]

**7. APPEAL AND ERROR ☞1062 — HARMLESS ERROR — INSTRUCTIONS—CURE BY VERDICT.**

In an action for libel, error, if any, in submitting the question of exemplary damages was harmless, where the jury found that no exemplary damages were recoverable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. ☞1062.]

**8. LIBEL AND SLANDER ☞124—INSTRUCTIONS —MEANING OF LANGUAGE.**

In an action for libel in charging on report that plaintiff, chief of police of another city, was to be investigated for carrying his son on the city pay roll as confidential clerk, in violation of the law, an instruction that the publication did not charge that the son was on the city pay rolls were properly refused.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 365–370, 372, 373; Dec. Dig. ☞124.]

**9. LIBEL AND SLANDER ☞124 — LIBELOUS PER SE—DAMAGES.**

In an action for damages for a publication libelous per se, an instruction that the jury might find for plaintiff such damages as from the evidence they believed he suffered was proper.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 365–370, 372, 373; Dec. Dig. ☞124.]

**10. LIBEL AND SLANDER ☞5—"MALICE"— "INFERENCE."**

The publication of a libelous article upon the written communication of defendant's correspondent, without any reasonable inquiry as to its truth when inquiry would have disclosed its falsity, was recklessly made without legal justification or excuse, and in a spirit of wanton disregard of the rights of plaintiff, so that malice might be inferred therefrom.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 278; Dec. Dig. ☞5.

For other definitions, see Words and Phrases, First and Second Series, Malice.]

**11. LIBEL AND SLANDER ☞121—DAMAGES— EXCESSIVE DAMAGES.**

A verdict of $2,500 special and $10,000 general damages in an action for libeling plaintiff by a publication that, when chief of police

of another city, he had carried his son on the city pay roll, in violation of law, was excessive, and would be reversed unless plaintiff's widow and children filed a remittitur of $5,000.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 353, 354; Dec. Dig. ⊙ 121.]

On Motion for Rehearing.

12. APPEAL AND ERROR ⊙1140—REMITTITUR —STATUTE.

When an error has been committed by the trial court, which has possibly caused the rendition of an excessive verdict, and it is impossible to mathematically determine the sum of the excess found in consequence of the error, Rev. St. 1911, art. 1631, requiring the Court of Civil Appeals, when of the opinion that the verdict is excessive and that the cause should be reversed for that reason only, to indicate to the party in whose favor the judgment was rendered the amount of the excess, and the time within which he may file a remittitur, and requiring the court, if such remittitur is filed, to reform and affirm, and, if not, to reverse, does not apply, and the entire judgment will be reversed, and the cause remanded for another trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4462–4476; Dec. Dig. ⊙ 1140.]

13. APPEAL AND ERROR ⊙1140—EXCESSIVE DAMAGES—CURE BY REMITTITUR.

When it can be determined by the appellate court what excessive amount has been erroneously found by the jury by reason of an erroneous instruction, the court is authorized to cure such error by requiring a remittitur.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4462–4476; Dec. Dig. ⊙ 1140.]

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Action by Ernest Wegner, Sr., against the Houston Chronicle Publishing Company, continued after plaintiff's death by his widow and children. Judgment for plaintiffs, and defendant appeals. Affirmed.

Kittrell & Kittrell, of Houston, and E. F. Harris and Harris & Harris, all of Galveston, for appellant. James B. & Charles J. Stubbs and Marion J. Levy, all of Galveston, for appellees.

LANE, J. For the purposes of this opinion the following statement of the case will be sufficient:

Shortly prior to the 5th day of December, 1912, there appeared in the Galveston Labor Herald, a paper published in the city of Galveston, the following:

"We will ask this question until it is answered:

"Who is Chief of Police?

"Delenda Est Money Lender.

"'And Jesus went into the temple of God and cast out all of them that sold and bought in the temple and *overthrew the tables of the money changers* (Loan Sharks, 1912) and the seats of them that sold doves.—Matthew xxi, 12. 'And said unto them: It is written—My house shall be called the house of prayer, but ye have made it a den of thieves.'

"To Mayor-President Lewis Fisher and Commissioners V. E. Austin, I. H. Kempner, A. P. Norman and M. E. Shay of the City of Galveston—Greeting:

"In the issue of the Galveston Labor Herald of date November 9 we asked the question, 'Whether there was such a position provided by the city charter as confidential clerk to the chief of police?' No reply to the contrary has been received, therefore the query will be answered by the Labor Herald itself."

On the 5th of December, 1912, on request of Commissioner Shay, the published communication as above set out was read by the city attorney to the board of commissioners, who then referred the same to the commissioner of fire and police of Galveston city for investigation and report. Thereafter, on the 6th day of December, 1912, the Houston Chronicle Publishing Company, a corporation which publishes the Houston Chronicle, a newspaper, in Houston, Tex., published in its said newspaper the following article:

"Galveston to Probe Police.

"Committee to Investigate Charge That Man Not Provided for is on Pay Roll—Prizes Awarded.

"Special to the Chronicle.

"Galveston, Texas, Dec. 6—As a result of an article printed in the Galveston Labor Herald, the city commissioners appointed a committee, consisting of Mayor Lewis Fisher, Commissioner of Fire and Police A. P. Norman, and City Attorney Mart H. Royston, to probe the matter. The charge is that, contrary to law, the Chief of Police, E. Wegner, has E. Wegner, Jr., on the city pay roll as 'confidential clerk.' It is said no provision is made for such employment."

After such publication by said Houston Chronicle Publishing Company, hereinafter called the Chronicle Company, Ernest C. Wegner, Sr., brought suit against said Chronicle Company for damages alleged to have been suffered by him as a result of said publication, which he alleged to be maliciously false and slanderous. After said suit was filed, and before the case was tried, plaintiff, Ernest C. Wegner, Sr., died, and thereafter his widow and children made themselves parties plaintiff and carried on the litigation. By amended petition of the new-made parties, filed after the death of Ernest C. Wegner, Sr., allegation is made that in repetition and aggravation of the alleged libel of December 6, 1912, said Chronicle Company, on the 8th day of December, 1912, published an additional libel in the following words:

"An illustration of Galveston commission methods has just been given. Mr. Blair, editor of the Labor Herald, wrote to the commission, charging that the chief of police was employing 'a confidential clerk,' and asking if there were any charter provision for such position. The commissioners acted promptly. Instead of following the immortal Vanderbilt in his attitude to the public, they considered the question seriously and appointed a committee to make a thorough investigation of the matter. There is no provision in the charter for the employment of a 'confidential clerk' by the chief of police, or by any other official of the city. From the moment of filing the charges until the final verdict is rendered the people will know all about the case. There will be no secrecy about

⊙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

it, for there never is about anything the commissioners do."

Prayer was for actual general damages in the sum of $10,000, special damages in the sum of $10,000, and exemplary damages in the sum of $5,000.

The defendant answered by various special exceptions, and admitted the publication of the articles above set forth in the Houston Chronicle, especially denied various allegations of the plaintiffs, and pleaded absolute privilege and qualified privilege, in that the articles published constituted a report of the proceedings of a public body charged with public and official duty, with the proper performance of which duty the public was concerned, and that the publications were a fair, true, and impartial account of executive and legislative proceedings, which were matters of record, and that said articles constituted a true and impartial account of a public meeting organized and conducted for public purposes only, and that said articles were a fair comment upon a statement concerning official acts of public officials, published for general information; that the defendant publishes a newspaper, and rests upon the obligation to furnish its readers with a true account of all matters of public interest, and that it endeavored to report concerning E. C. Wegner, Sr., only that which was true and which it believed to be true, and defendant had no purpose in making the publication other than to set forth to its readers what it believed to be the truth; that defendant entertained no feeling of ill will against the plaintiff, and neither it nor any officer nor any employé of defendant had any purpose to do any injury to the said Ernest C. Wegner, Sr.

The case was tried before a jury, which was instructed by the court that they could not predicate any verdict of libel based upon the editorial of December 8, 1912, being the same set out in the amended petition filed by the substituted plaintiffs after the death of the original plaintiff, Ernest C. Wegner, Sr. The verdict of the jury was for appellees for $2,500 special and $10,000 general damages, and for no exemplary damages. Judgment was rendered in favor of appellees in accordance with said verdict, from which the Chronicle Company has appealed.

Appellant's assignments 1 to 5, inclusive, insist that the trial court erred in overruling appellant's special exceptions A. B. C. D. and E. to appellees' petition, wherein it is alleged that the article published by appellant is libelous, because: (1) It does not appear from said article that any charge is made by the defendant that any person is (or was) on the pay rolls of the city of Galveston; (2) it is not libelous per se, nor can such language be amplified or extended or construed into libel by plaintiffs by innuendo; (3) it is not libelous because it does not charge that any money was ever paid to the said E. Wegner, Jr., by the city of Galveston or from its funds, or that the city of Galveston ever sustained any loss, or that any of the funds of said city were diverted or applied to the payment of or for the use or benefit of said E. Wegner, Jr., or the said E. Wegner, Sr.; (4) it is not libelous because it alleges no fraud or secrecy on the part of the plaintiff, and does not allege nor convey the meaning that plaintiff was using the services of his son otherwise than for his (plaintiff's) convenience as his employé, and does not allege that the city of Galveston was in any wise defrauded or attempted to be defrauded; and (5) it is not libelous because it does not purport to be a charge made by the Chronicle Company against E. Wegner, Sr., but simply purports to be, and is, equivalent in law and in fact to a statement that such a charge had been made by another or other person, and that the Chronicle Company only so gave it, neither itself asserted it to be true, nor vouching for the truth thereof.

We will not undertake to consider these various assignments separately, as no good can be subserved in so doing, but will do so in a general way, as they practically present but one proposition; that is, that the alleged libelous article is, in fact, not libelous, and cannot be made so by innuendo averments.

[1] The undisputed evidence shows that no such charge as was stated in said article had been made by any one except the Chronicle Company; that such charge, as published by the Chronicle Company, was untrue; and that appellant gave publication to the same recklessly, in a spirit of wanton indifference, and without reasonable, if any, effort whatever to ascertain the truth or falsity of the communication of its correspondent which contained the false charge before publishing same.

We think the indisputable substance of the alleged libelous article is that E. Wegner, chief of police of Galveston, had been charged with having, contrary to law, placed E. Wegner, Jr. (his son), on the pay rolls of the city of Galveston as his confidential clerk, intending that said E. Wegner, Jr., should draw pay from said city contrary to law. Such being the substance of such publication, it is, we think, unquestionably libelous per se, being admittedly untrue. To constitute such article libelous it was not necessary that it should charge that any money was ever paid to E. Wegner, Jr., by the city, or from its funds, or that it ever sustained any loss, or that any of its funds were diverted or applied to the payment of or for the use or benefit of the said E. Wegner, Jr., as suggested by appellant in its third assignment. A false charge that he had attempted to do the unlawful act alleged or charged was sufficient. Nor was it necessary that the libelous article should state that any fraud or secrecy was practiced by plaintiff, E. Wegner, Sr., or that the city of Galves-

ton was in any wise actually defrauded, as suggested in appellant's fourth assignment, to constitute libel.

[2] Nor does the fact that the false charge or statement made in said Chronicle simply purports to be a statement or charge made by another or other person, and that the Chronicle only so gave it, and that it neither itself asserted such charge to be true nor vouched for the truth thereof, relieve such statement of its libelous character, as suggested by appellant's fifth assignment. Guisti v. Galveston Tribune, 105 Tex. 497, 150 S. W. 874, 152 S. W. 167; Walker v. Pub. Co., 70 S. W. 558; Cranfill v. Hayden, 97 Tex. 544, 80 S. W. 609; Belo v. Smith, 91 Tex. 225, 42 S. W. 850; Publishing Co. v. Lewy, 52 Tex. Civ. App. 22, 113 S. W. 574; Belo v. Fuller, 84 Tex. 450, 19 S. W. 616, 31 Am. St. Rep. 75; Sanders v. Hall, 22 Tex. Civ. App. 282, 55 S. W. 594.

In Patterson v. Wallace & Frazer, 93 S. W. at page 150, the court said:

"One who publishes a defamatory statement made by another cannot justify [himself] by proving that the other made the statement. By publishing it he becomes responsible for his own act in so doing, and, if he seeks to justify, he must prove the truth of the charge published."

And again, quoting from Nicholson v. Rust (Ky.) 52 S. W. 933:

"Nor is it any justification for a repetition of a slander that it had been reported in the neighborhood, or that appellant, at the time he communicated the slander, gave the party to whom he related it the name of the person from whom he learned said report; * * * and it cannot be relied on by way of justification that he did not intend to charge appellant with the offense of fornication."

"It will afford no justification in any action for slander that the defamatory matter had been previously published by a third person, or that the defendant, at the time of his publication, disclosed the name of that third person, and believed all of the statements to be true." Burt v. McBain, 29 Mich. 260; Newell on Defamation, Slander, and Libel, pp. 354, 355; and authorities above cited.

In Kelley v. Dillon, 5 Ind. 426, the court said:

"Let it be understood that a bare rumor * * * is sufficient to justify the retailing of slander, and character would be at the mercy of the artful and designing, as such defenses could be * * * manufactured beforehand to suit any emergency."

Every repetition of a slander is a willful publication of it, rendering the speaker liable to an action. Talebearers are as bad as talemakers.

We construe the language of the publication complained of to be libelous per se, and that its publication by the Chronicle Company made it liable to the plaintiff Wegner, Sr., for any damages he suffered by reason of such publication. Whether the publication alleged that any moneys belonging to the city of Galveston were paid to Wegner, Jr., or that said city sustained any loss, or in any way suffered actual loss by the unlawful act wrongfully charged to E. Wegner, Sr., or whether said publication was but a repeti-

tion of a charge made by another person, which the Chronicle Company believed to be true, are immaterial questions, especially so as no exemplary damages were recovered in this suit. We therefore overrule said assignments 1 to 5, inclusive.

[3] Appellant insists by his sixth and seventh assignments that the court erred in not striking out so much of appellees' amended petition as set up the editorial published in said Chronicle on the 8th day of December, 1912, for various reasons stated in its special exception thereto. There is no merit in this assignment, as the court in his charge instructed the jury as follows:

"You are further instructed that you cannot predicate any verdict of libel based upon the said publication of December 8, 1912, by defendant in said Houston Chronicle."

Such charge in its practical effect was equivalent to sustaining appellant's said exception. It must be presumed, in the absence of any showing to the contrary, that the jury obeyed the instruction given. Patterson v. Wallace & Frazer, 93 S. W. 146.

[4] The eighth assignment insists that the trial court erred in refusing to give to the jury appellant's special charge No. 2, which was, in substance, an instruction to the jury to find for the Chronicle Company on the issue of special damages, because there was no evidence authorizing a recovery of special damages, and because the only damages recoverable under the pleadings and proof are embraced on the charge of the court, given under the head of general damages.

When the article upon which the suit is based, is, as in this case, libelous per se, the plaintiff is entitled to recover such general damages as he has sustained thereby without proof other than of the fact of the libel. But, if he would enlarge the recovery beyond the general damages he has sustained, then only it is incumbent upon him to both allege and prove that he has suffered damages. The plaintiffs under the general allegations of damages may, upon proof of a libel per se, recover for injury to his reputation, mental and physical distress, sickness produced by humiliation, etc. These would be the direct result of the publication, and can be recovered for under the allegations of general damages, although not specifically pleaded as such.

[5, 6] In this case the court, in addition to submitting the question of general damages to the jury, submitted as special damages several items which would properly under the head of general damages, and not special damages, and we think this was technical error, but that it could not possibly have been of harm to appellant, for the reason that after all such items of damages as were allowed under the court's charge as a whole could have been recovered under the had of general damages, and the fact that the court erroneously charged on special, and the jury designated some portion of such

recovery as special damages, is immaterial. But, if it be conceded that the erroneous charge complained of tended to increase the amount of recovery, such error is rendered harmless in view of the fact that this court will require appellees to file with the clerk of this court a remittitur of $5,000 before affirmance. · Belo v. Smith, 40 S. W. 856.

[7] Appellant's ninth, tenth, thirteenth, fifteenth, twentieth, and twenty-first assignments insist that the trial court erred in instructing the jury on the question of exemplary damages, and in not instructing the jury, at the request of defendant, that no such damages could be recovered. In this case the jury found that no exemplary damages were recoverable; so, if the court erred in submitting the question to the jury, it was harmless error, as the jury found against plaintiff and for defendant upon this issue. We therefore overrule said assignments.

[8] Assignments 11 and 12 complain of the action of the trial court in refusing appellant's special charges 4 and 5. The substance of these special charges were that the publication complained of was not a charge by defendant that E. Wegner, Jr., was on the city pay rolls. It meant only that it was so rumored or reported, and the language therein was not libelous. The complaints made in these assignments are untenable. The court did not err in refusing to give said charges to the jury. Patterson v. Wallace & Frazer, 93 S. W. 146; Kelley v. Dillon, 5 Ind. 426, supra.

[9] The fourteenth assignment insists that the main charge as a whole is erroneous because it, in effect, peremptorily directs a verdict against the defendant, and nowhere allows the jury to find for the defendant. We think the trial court properly held that the language of the article complained of is libelous per se, and therefore the court correctly instructed the jury to find for plaintiffs such damages as they should find from the evidence E. Wegner, Sr., suffered by reason of such libel, and, so believing, we overrule said assignment.

The same may be said of assignments Nos. 16 and 17 as of assignment No. 14, and for the reasons given for overruling assignment 14 we overrule assignments 16 and 17.

[10] Assignment 18 insists that the trial court erred in defining the meaning of the term "malice," because there is no evidence tending to prove malice, or any act on the part of the Chronicle Company showing a reckless disregard of the rights of E. Wegner, Sr.

We have already shown that the article complained of was published upon the written communication of appellant's Galveston correspondent without any reasonable inquiry as to the truth of such communication, and that, had such inquiry been made, the falsity of the same would have been disclosed. We therefore conclude that said

182 S.W.—4

publication was recklessly made without legal justification or excuse, and in a spirit of wanton disregard of the rights of E. Wegner, Sr., and that from such publication malice may be inferred. Cotulla v. Kerr, 74 Tex. 90 and 95, 11 S. W. 1058, 15 Am. St. Rep. 819; Forke v. Homann, 14 Tex. Civ. App. 670, 39 S. W. 213; Mayo v. Goldman, 57 Tex. Civ. App. 475, 122 S. W. 449; Ellis v. Garrison, 174 S. W. 964; Houston Chronicle Co. v. McDavid, 157 S. W. 224; Reid v. Publishing Co., 158 Ky. 727, 166 S. W. 245.

In Courier Journal Co., 104 Ky. 335, 47 S. W. 229, the court said:

"If, as a matter of fact, the words published were false, and tended to the injury of plaintiff, and were published recklessly, even without special ill will, defendant is equally guilty, and punitive damages may be recovered."

We therefore overrule the eighteenth assignment.

We overrule the nineteenth assignment for the reasons already given for overruling the eighth assignment.

Assignments 20, 21, 22, 23, 26, and 27 have been considered, and are overruled for reasons given for overruling assignments hereinbefore considered.

[11] The twenty-fourth and twenty-fifth assignments insist that the judgment for $12,500, rendered by the trial court is grossly excessive, and for that reason such judgment should be reversed, and the cause remanded.

After a most careful reading of the entire statement of facts, we have reached the conclusion that said judgment is excessive, and, so believing, it is ordered that the judgment of the lower court be reversed, and the cause be remanded for another trial, unless appellees shall, within ten days from the 25th day of November, 1915, file with the clerk of this court a remittitur of $5,000; but, in the event such remittitur is so filed, then in that event judgment shall be here entered for appellees against appellant for the sum of $7,500.

It appearing to this court that appellees have within the time stipulated in our opinion filed with the clerk of this court a remittitur of $5,000, judgment is here entered in favor of appellees against appellant for the sum of $7,500.

### On Motion for Rehearing.

In their petition appellees allege that the publication of the said libelous article by appellant injured Ernest C. Wegner, Sr., in his reputation, caused him to suffer pain, anguish, and distress, both mental and physical, and that the same greatly impaired and injured his health, and prayed for $10,000 actual and $10,000 special, and $10,000 exemplary, damages. The court instructed the jury: (1) That the publication complained of by appellees was libelous per se, and that plaintiffs were entitled to recover such *general* compensatory damages as the jury

should find Ernest C. Wegner, Sr., suffered by reason of said publication to his *character* or *reputation*, and for such damages as he suffered by reason of *mental* pain, if any, as the result of said publication; (2) that if the jury should find that by reason of said publication E. C. Wegner, Sr., was injured and impaired in *health*, that plaintiffs were further entitled to recover such *special* damages as the jury might find from the evidence said Wegner, Sr., so suffered by reason of injury and impairment of his *health*, thus separating the alleged items of damages into two classes. Under this charge the jury found general damages in the sum of $10,000 and special damages in the sum of $2,500.

While appellees have alleged injury to the character and reputation, the mental and physical suffering, and impairment of the health, of said Ernest C. Wegner, Sr., by reason of said publication, and have prayed for both general and special damages, there is no allegation alleging special damages; and as the entire recovery to which appellees were entitled under their pleading could and should have been recovered under a charge submitting the question of general damages only, we held in the main opinion that the learned trial court erred in his charge in separating the different alleged items of damages into two classes, i. e., general damages and special damages, and in authorizing a recovery of general damages for a part of the alleged items of damage, and the recovery of special damages for another item of said alleged damage. But as it is clear that double damage was not authorized by such charge, and could not have been given by virtue of the court's charge, the mere fact that recovery was permitted for the alleged items separately, when such recovery could have been had under a charge submitting all the items conjunctively, should not be cause for a reversal of the judgment of the trial court, especially so as this court has required a remittitur of $5,000.

Counsel for appellant has filed a motion for rehearing, in which he vigorously and earnestly attacks the holding of the court referred to, and insists that said charge of the court authorized double damages, and that such double or excessive damages as was probably found by the jury by reason of said erroneous charge cannot be mathematically determined, and therefore the judgment cannot be legally cured by a remittitur of $5,000, or any other sum less than the whole. We think such contention untenable. Suppose the court had added to the items named in the first portion of his charge the further item of "physical pain resulting in

the impairment of health," which was submitted in the second part of said charge as an element of special damages; would any one insist that it would have been possible that such addition would or could have had the effect to decrease the amount found by the jury as general damages? On the other hand, would not such addition have tended to furnish further reason for the jury to find $10,000 general damages, the full amount prayed for as general damages, as they did find? We think so, and, so believing, we think we can to a mathematical certainty say that such erroneous charge could not have increased and did not increase the amount of recovery found by the jury in any sum in excess of $2,500, and therefore a remittitur of $5,000 clearly rendered such charge harmless.

[12] After a review of the cases cited by counsel in support of the motion we have concluded that they are not applicable to the facts in the present case. We are of opinion that when an error has been committed by the trial court which has probably, or perhaps even possibly, caused the rendition of an excessive verdict, and that it is impossible for the appellate court to mathematically determine the sum of such excess erroneously found by reason of such error, article 1631, Revised Statutes, would not apply, and the entire judgment should be reversed, and the cause remanded for another trial. Railway v. Wesch, 85 Tex. 593, 22 S. W. 957; Nunnally v. Taliaferro, 82 Tex. 286, 18 S. W. 149; Electric Co. v. Green, 48 Tex. Civ. App. 242, 106 S. W. 463; Railway Co. v. Bird, 48 S. W. 756.

[13] But when it can be determined by the appellate court what excessive amount had been erroneously found by the jury by reason of an erroneous instruction, as in this case, the court is authorized to cure such error by requiring a remittitur. Railway v. Trawick, 80 Tex. 275, 15 S. W. 568, 18 S. W. 948; Railway v. Bellew, 22 Tex. Civ. App. 264, 54 S. W. 1079; Railway Co. v. Keel Grain Co., 132 S. W. 837; Petroleum Co. v. Townsite Co., 48 Tex. Civ. App. 555, 107 S. W. 609; Old River Irrigation Co. v. Stubbs, 137 S. W. 154. The case of Railway Co. v. Keel Grain Co., supra is one in which the court first ordered a reversal because of erroneous charge, but on motion for rehearing the judgment was affirmed upon appellee's filing a remittitur, thereby rendering such charge harmless.

After a careful review and consideration of all the assignments in appellant's motion, and the authorities cited in support thereof, we conclude that the motion should be refused; and it is so ordered.